792

Peterborough District Court
No. 85-260

*In re* TODD P.

April 9, 1986

*Hatfield, Bosse & Moran P.A.*, of Hillsborough (*Margaret-Ann Moran* on the brief and orally), for Hillsboro-Deering Cooperative School District.

*David Horan*, assistant county attorney, of Manchester, by brief and orally, for Hillsborough County.

*Howard and Gleason P.A.*, of Henniker (*Peter S. Wright, Jr.*, on the brief and orally), for the Town of Henniker.

*Developmental Disabilities Advocacy Center, Inc.*, of Concord (*Ronald K. Lospennato* on the brief), by brief as *amicus curiae*.

*Soule, Leslie, Zelin, Sayward & Loughman*, of Salem (*Gerald M. Zelin* on the brief and orally), for New Hampshire School Boards Association, New Hampshire School Administrators Association, and Derry Cooperative School District, as *amici curiae*.

JOHNSON, J. In this appeal from a final order of the Peterborough District Court (*Brighton*, J.) which declared Hillsboro-Deering School District (the school district) liable for the educational portion of Todd P.'s placement expenses, the school district asserts that the district court had no authority to issue a liability order against it for a program that it had not voluntarily chosen. We agree, and accordingly reverse the order of the district court.

In 1980, the Henniker school system found that Todd P. was educationally handicapped, and it established an individual education plan (IEP) for him. In September 1983, Todd began attending the Hillsboro-Deering Middle School, which found that he was emotionally disturbed. In January 1984, the Hillsboro-Deering School District established an IEP for Todd, finding that Todd's educational needs could be addressed within the school district. The IEP provided for psychological counselling, parent consultation, and academic monitoring.

In March 1984, Todd was adjudicated a delinquent child, pursuant to RSA chapter 169-B (Supp. 1985), in Hillsborough District Court (*Hatfield*, J.). The court ordered that Todd be placed outside the home, and placed Todd on probation. The court subsequently found that Todd was guilty of violating its order, and ordered that he be detained at the Youth Development Center (YDC), subject to a suspension of the order upon a petition showing "either [an] alternative placement or other good cause." On March 23, 1984, the court suspended Todd's placement at the YDC on the condition that Todd be placed at the Chamberlain School. He resided at the Chamberlain School until August 1985. He is now out of the placement system.

The issue of liability for the expenses of Todd's Chamberlain School placement was transferred to a different court, the Peterborough District Court, because of conflicts between the parties and the Hillsborough District Court. In July 1984, the Peterborough court found that the Town of Henniker was the legally liable unit. In October 1984, the court granted the Town of Henniker's motion to join the Hillsboro-Deering School District, pursuant to RSA 169-B: 22 (Supp. 1985). During the hearing, in December 1984, the school district and the Town of Henniker agreed that the sole issue before the court was whether the Town of Henniker or, rather, the school district was liable for the educational portion of the expenses of Todd's Chamberlain School placement.

The district court ruled that the Town of Henniker was legally liable for the residential portion of Todd's placement. It found that the IEP developed by the school district for Todd was "inadequate," and held that the school district was liable for the educational share of Todd's placement expenses. The school district was ordered to reimburse the Town of Henniker for expenses paid by the town for the educational part of Todd's placement, and ordered to pay all of the future expenses for Todd's education at the Chamberlain School. Motions to reconsider were filed, and the court held that its order concerning liability for Todd's educational expenses was valid under RSA 169-B:22 (Supp. 1985).

The school district appealed to this court, asserting that the district court is without authority to review the substance of an IEP developed by the school district. It argues that the district court has no jurisdiction to issue liability orders against a school district for an educational program that was not part of an IEP established by it. We agree.

The issues before us arise out of the tangled interrelationship of New Hampshire's juvenile justice system and special education laws. This interrelationship is the result of the fact that many children are both delinquent and educationally handicapped. *See* Winter, *Learning Disability: The young offender's curse*, 69 A.B.A.J. 427 (1983) (it is estimated that 75% of all juvenile delinquents suffer from a learning disability). Todd's needs, which stem from both his delinquency and his educational handicap, must be addressed through both the juvenile justice statutes and the special education laws.

■ The special education statute, RSA chapter 186-C (Supp. 1985), was developed "to insure that the [S]tate board of education and the school districts of the [S]tate provide a free and appropriate public education for all educationally handicapped children[,]" RSA

186-C:1 (Supp. 1985), and was enacted to comply with the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401–1416. *See Petition of Milan School District*, 123 N.H. 227, 231, 459 A.2d 270, 273 (1983). These laws promote the education of handicapped children by designing a comprehensive administrative scheme to identify and provide services for them. All expenses incurred in accordance with RSA chapter 186-C (Supp. 1985) are payable by the school district. *See* RSA 186-C:13 (Supp. 1985).

█ The school district identifies an educationally handicapped child, and is responsible for developing an IEP with the participation of the child's parents or guardian. RSA 186-C:7 (Supp. 1985). The parents or guardian of the child have the right to appeal school district decisions to the State Board of Education, RSA 186-C:7, II (Supp. 1985), and, if still dissatisfied, may bring an action in "any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. at § 1415(e)(2). In New Hampshire, the superior court is the State court of "competent jurisdiction" to hear these appeals. *See John H. v. Brunelle*, 127 N.H. 40, 44, 500 A.2d 350, 352 (1985).

The Hillsboro-Deering School District had instituted an IEP for Todd, and determined that his needs could be addressed within the school district at Hillsboro-Deering Middle School. Todd was then ordered placed at the Chamberlain School by the Hillsborough District Court, on the basis of a delinquency petition, pursuant to RSA chapter 169-B (Supp. 1985). The school district did not participate in the district court's decision to place Todd at Chamberlain. Although representatives of the school district, at the hearing in March 1984, expressed concern for Todd's safety if he returned to Hillsboro-Deering Middle School, the district court apparently had no guidance from the school district concerning Todd's special education needs. The school district had reevaluated its position concerning Todd's placement one week before the hearing, and had concluded that the existing IEP remained appropriate for Todd.

The Peterborough District Court determined liability for the expenses of Todd's placement pursuant to RSA 169-B:40 (Supp. 1985) (section effective until Jan. 1, 1986), which provides that placement expenses arising out of a delinquency adjudication must be paid by the town in which the child resides, with a right of reimbursement from the person legally liable for the child's support. The provision also requires that expenses arising under RSA chapter 186-C (Supp. 1985) are payable in accordance with that chapter, but that "[n]o school district shall be required to pay the expenses of the education program except as provided by RSA [chapter] 186-C."

(After January 1, 1986, placement expenses incurred under RSA chapter 169-B (Supp. 1985) are payable by the division of children and youth services, department of health and human services, and the State has a right of action against the persons legally liable for the minor's support. RSA 169-B:40 (Supp. 1985) (section effective Jan. 1, 1986).)

The district court has the authority to issue liability orders against the town declared the legally liable unit under RSA 169-B:40 (Supp. 1985) (section effective until Jan. 1, 1986). This provision also grants the district court the authority to issue a liability order against a school district for educational expenses incurred in accordance with RSA chapter 186-C (Supp. 1985). Todd's expenses at the Chamberlain School, however, were not voluntarily chosen by the school district as part of the IEP developed pursuant to RSA chapter 186-C (Supp. 1985), and therefore were not chargeable to the school district under RSA 169-B:40 (Supp. 1985) (section effective until Jan. 1, 1986).

■ The Peterborough District Court issued its liability order against the school district on the basis that RSA 169-B:22 (Supp. 1985) authorized it to substantively review Todd's IEP. Finding the IEP inadequate, the district court believed that it could "take such action as may be necessary to meet the needs of the educationally handicapped minor[,]" and it declared the school district liable for the educational portion of Todd's expenses at Chamberlain.

Under RSA 169-B:22 (Supp. 1985), the district court may

> "[a]t any point during the proceedings, . . . join the legally liable school district for the *limited purposes* of directing the school district to determine whether the minor is educationally handicapped as defined in RSA [chapter] 186-C or, if the minor has already been determined to be educationally handicapped, of directing the school district to review the services offered or provided under RSA [chapter] 186-C."

(Emphasis added.) The district court therefore has the authority, during a hearing on a delinquency petition of a child already judged educationally handicapped, to order the school district to review the IEP. RSA 169-B:22 (Supp. 1985) provides no authority, however, for the district court to review the substance of an IEP and declare it inadequate.

■ ■ Todd's placement at the Chamberlain School was authorized by RSA chapter 169-B (Supp. 1985), and the district court is not permitted to issue a liability order against the school district for

the expenses of a placement that is not a part of its IEP developed in accordance with RSA chapter 186-C (Supp. 1985). The placement was not established to address Todd's educational needs, and the cost of the residential placement is thus the responsibility of the legally liable unit under RSA 169-B:40 (Supp. 1985) (section effective until Jan. 1, 1986). Nothing in the statute indicates that this liability does not also include the cost of the educational placement. *See In re Laurie B.*, 125 N.H. 784, 789, 489 A.2d 567, 570 (1984).

Developmental Disabilities Advocacy Center, Inc., in an amicus brief, argues that the intervention of the juvenile court in Todd's life disrupted the process established by the special education laws, and effectively changed Todd's placement. After an IEP had been developed for Todd, the juvenile court placed him through an adjudication under the juvenile justice laws and thus interfered with the school district's special education plan for Todd. Amicus submits that as long as the juvenile court has the authority to change the placement of an educationally handicapped child under RSA chapter 169-B (Supp. 1985), it must have the "concomitant authority to issue orders sufficient to ensure that there are adequate and appropriate [educational] services in place . . . ." The school district believed that Todd's educational needs could be met within the school district, and it did not participate in the disposition of the child under RSA chapter 169-B (Supp. 1985).

The school district's lack of participation in Todd's placement by the juvenile court permitted it in this case to evade its financial responsibility for Todd's special education needs. The juvenile court's disruption of special education services may be remedied by ensuring its awareness of the child's educational needs. The school district's participation in the juvenile justice process will permit the juvenile court to place a child on the basis of both the child's delinquency and his or her special education needs, and to assign liability accordingly. On its own initiative, the school district should review a child's IEP after a delinquency adjudication, or the district court may order review. If the school district refuses to review the IEP, or its decision after review is still unsatisfactory to the parents or legal guardian of the educationally handicapped child, they may take an appeal. RSA 186-C:7, II (Supp. 1985).

Hillsborough County asserts that because the special education administrative appeals process does not provide for the participation of the legally liable unit in a delinquency proceeding, exhaustion of administrative remedies is a futile requirement. Although the legally liable unit under the juvenile justice laws may not participate in the administrative appeals process, parents of a child involved in a delinquency adjudication have an incentive to appeal a

school district's decision because the legally liable unit under RSA chapter 169-B (Supp. 1985) has a right of reimbursement against the parents for the expenses of the placement charged to it. The administrative process is not futile here because the State Board of Education, or the superior court or federal district court, has the power to determine that the IEP is inadequate. Without the use of this administrative process, however, no administrative record exists to guide the court in evaluating the substance of an IEP. *See Garrity v. Gallen*, 522 F. Supp. 171, 221 (D.N.H. 1981).

■ Once a child is placed by the juvenile court, and the school district is ordered to review the child's IEP, the school district is financially responsible for the educational portion of the placement while administrative remedies are pursued. *See Parks v. Pavkovic*, 557 F. Supp. 1280, 1285 n.6 (N.D. Ill. 1983), *aff'd in part and rev'd in part on other grounds*, 753 F.2d 1397 (7th Cir.), *cert. denied*, 105 S. Ct. 3529, 106 S. Ct. 246 (1985). The assumption is that the special education portion of a placement under the juvenile justice laws is the responsibility of the school district. *See Juvenile Case #1089*, 119 N.H. 64, 66–67, 398 A.2d 65, 67 (1979).

■ In this case, however, the Peterborough District Court determined liability after Todd's placement had taken place, and the school district had not been ordered to review his IEP. No administrative appeal under RSA chapter 186-C (Supp. 1985) was pending. The district court had the authority to order a review of Todd's IEP, but had no authority to issue a liability order against the school district for the educational expenses of a placement that the school district had not established as part of Todd's IEP. Todd's placement at the Chamberlain School was the result of a delinquency adjudication, and the legally liable unit, under RSA 169-B: 40 (Supp. 1985) (section effective until Jan. 1, 1986), is responsible for the expenses of that placement. The order, therefore, is reversed.

*Reversed.*

All concurred.