Grafton
Nos. 94-502
 94-685

ASHLAND SCHOOL DISTRICT

v.

NEW HAMPSHIRE DIVISION FOR CHILDREN, YOUTH, AND FAMILIES

May 23, 1996

*Lawson & Philpot, P.C.*, of Laconia (*Edward E. Lawson* on the brief and orally), for the plaintiff.

*Jeffrey R. Howard*, attorney general (*Nancy J. Smith*, assistant attorney general, on the brief and orally), for the defendant.

*Disabilities Rights Center, Inc.*, of Concord (*Ronald K. Lospennato* on the brief and orally), for the intervenors, Shawn P. and the class in *James O. v. Marston*, No. 86-6-S (D.N.H. Aug. 23, 1991) (consent decree).

*Soule, Leslie, Zelin, Sayward and Loughman*, of Portsmouth (*Gerald M. Zelin* on the brief), and *Sheehan, Phinney, Bass and Green*, of Manchester (*Thomas J. Flygare* on the brief), for the Newmarket School District, the New Hampshire School Administrators Association, and the New Hampshire Association of Special Education Administrators, as *amici curiae*.

BRODERICK, J. The defendant, the New Hampshire Division for Children, Youth, and Families (DCYF) appeals the decision of the Superior Court (*Lynn*, J.) that it was solely liable for the costs of the special educational component of a student's placement at the Spaulding Youth Center (Spaulding). We reverse and remand.

On May 6, 1992, the Plymouth District Court (*Kelly*, J.) ordered Shawn P., an "educationally disabled" fifth-grade student in the

Ashland Elementary School, placed at Spaulding under the State's delinquency statute, RSA chapter 169-B (1994) (amended 1995). At the time of Shawn's court-ordered residential placement, the plaintiff, the Ashland School District, was implementing an individualized education plan (IEP) for Shawn, see RSA 186-C:2, III (Supp. 1995), consisting of one thirty-minute block of resource room support daily to address his special educational needs. See RSA 186-C:7 (Supp. 1995); see also N.H. ADMIN. RULES, Ed 1109.02.

During the underlying juvenile proceedings that involved several temporary placements and ultimately culminated in the Spaulding placement, the district court formally joined the plaintiff to "review the services offered or provided under [the special education statute]" and to submit a written report to the court. See RSA 169-B:22 (1994). The plaintiff complied and advised the court that its review had "found the current services to be appropriate."

After Shawn arrived at Spaulding, Spaulding staff met to review Shawn's special educational needs. Although the plaintiff was represented at this meeting, it did not revise its earlier IEP, which called for on-site tutelage at the Ashland Elementary School.

Shawn remained at Spaulding until December 1992. Following Shawn's release, the defendant refused to pay for the special educational component of Shawn's placement. See 20 U.S.C. § 1413(a)(13) (1994); RSA 169-B:40, I (1994) (amended 1995); RSA 186-C:19-b (Supp. 1995). In response, the plaintiff filed a petition for declaratory judgment, asserting that it was not responsible for these costs because they were not authorized by Shawn's IEP and, as such, were not "special education" under State law. The defendant moved to dismiss. The superior court denied the motion and, ruling that "RSA 169-B:22 simply cannot be read to impose financial liability upon a school district for the educational component of a district court placement which is other than the one developed by the district in accordance with RSA 186-C," entered final judgment for the plaintiff. This appeal followed.

 The defendant first argues that the plaintiff failed to exhaust its administrative remedies and, therefore, that the superior court lacked jurisdiction. At this point, where the parties dispute which is responsible for the contested costs, an administrative appeal is not appropriate. Cf. N.H. ADMIN. RULES, Ed 1127.01 to .03; Murphy v. Timberlane Regional School Dist., 973 F.2d 13, 17 (1st Cir. 1992). The issue here, as the plaintiff notes in its brief, "is whether or not the lower court correctly interpreted two statutory provisions which set forth the respective financial obligations of local school districts, the [department of education] and DCYF." This is a legal issue as to

which specialized administrative understanding plays little role. *See Bourgeois v. Town of Bedford,* 120 N.H. 145, 149, 412 A.2d 1021, 1024 (1980). Indeed, the due process hearing procedure is not designed or intended to provide a forum for school districts to resolve disputes with State agencies over funding obligations for the special education component of court-ordered placements. Rather, the administrative procedures are principally intended to assist the parents or legal guardians of disabled students to resolve disputes concerning school district decisions relating to a student's "disabled" status, the nature and quality of an IEP, or the placement selected for implementation of an IEP. *See* RSA 186-C:16-b, I. The trial court found that the plaintiff confronted "a non-existent administrative appeals process," and we concur.

The defendant next argues that the trial court erred in ruling that *In re Todd P.,* 127 N.H. 792, 509 A.2d 140 (1986), mandates that the plaintiff cannot be responsible for the disputed costs. In *Todd P.,* we held that a school district would not be financially liable for the special educational component of a juvenile court placement where the school district was not notified of, and did not participate in, the proceedings. *Id.* at 798, 509 A.2d at 143. When *Todd P.* was decided, however, joinder of the legally liable school district was merely permissive. *See* Laws 1983, 458:1. Following our decision in that case, the relevant statute, RSA 169-B:22, was amended to *require* joinder of the legally liable school district "if the court contemplates a residential placement." Laws 1986, 223:12. Moreover, the legislature clarified where the financial burden for the minor's special education was to lie by adding: "Financial liability for such educational program shall be as determined in RSA 186-C." *Id.*

■ Rather than supporting the argument that the plaintiff is absolved from liability in this case, *Todd P.* supports the opposite conclusion: "The school district's lack of participation in Todd's placement by the juvenile court permitted it in this case *to evade its financial responsibility for Todd's special education needs.*" *Todd P.,* 127 N.H. at 797, 509 A.2d at 143 (emphasis added). *Todd P.* thus acknowledged that, had the district participated in the placement proceedings, it would have been financially liable for the disputed costs. "The assumption is that the special education portion of a placement under the juvenile justice laws is the responsibility of the school district." *Id.* at 798, 509 A.2d at 144.

Having concluded that *Todd P.* did not absolve the plaintiff from financial liability for the special educational component of Shawn's Spaulding placement, we must determine whether the legislature did. "The interpretation of a statute is to be decided ultimately by

this court." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

RSA 169-B:22 explicitly acknowledges that the district court is not bound by the school district's recommendation as to where the juvenile's educational needs can best be met. Nevertheless, "the school district *shall* offer an appropriate educational program and placement in accordance with RSA 186-C. Financial liability for such education program shall be as determined in RSA 186-C:19-b." RSA 169-B:22 (emphasis added). RSA 186-C:19-b in turn places financial responsibility on the defendant for all juveniles with special educational needs who have been placed by the juvenile court, RSA 186-C:19-b, I(a), "other than [costs] for special education," RSA 186-C:19-b, II(b). The school district is liable for these special education costs, limited to "3 times the estimated state average expenditure per pupil." RSA 186-C:19-b, II(a). Anything above that amount is the responsibility of the department of education. *Id.*

Residential placement is appropriate only "when it is clearly necessary for [the minor's] welfare or the interests of public safety and when it can be clearly shown that a change in custody and control will plainly better the minor." RSA 169-B:1, III (1994) (amended 1995). Here, the district court determined that such placement, although not favored, was nevertheless necessary. With that determination before it, the plaintiff could not continue to assert that the existing IEP was adequate.

■ The obligations imposed by the legislature on local school districts are not lifted merely because a court-ordered placement dictates that an educationally disabled child be taught for a period of time outside the public classroom. The right to receive special education to assist with essential learning needs at the expense of the school district attaches to the child and is not diminished because the dictates of RSA chapter 169-B will only allow instruction at the site of the temporary detention. Any other interpretation would ignore the statutory interplay between RSA chapter 169-B and RSA chapter 186-C and create the unlawful and unacceptable circumstance of an educationally disabled child without an operational IEP in place. To allow school districts to evade their responsibilities through real or imagined disagreements over residential placements and associated IEPs would jeopardize and possibly even defeat federal and State mandates that an educationally disabled child receive a free appropriate public education. *See* 20 U.S.C. § 1400(c) (1994); RSA 186-C:1 (Supp. 1995).

■ To the extent that the disputed costs were for "special education," the plaintiff is responsible for those costs, up to the

statutory limit. *See* RSA 186-C:19-b, II(a). The trial court ruled that "'special education' must be regarded as a term of art which covers only educational services provided in accordance with an IEP developed under RSA [chapter] 186-C." The statute at issue, however, defines "special education" as "instruction specifically designed to meet the unique needs of an educationally disabled child." RSA 186-C:2, IV (Supp. 1995). It is devoid of any requirement that an IEP be in place. Because we will not add words to a statute that the lawmakers did not see fit to include, *see Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994), we hold that an IEP developed by the school district is not a prerequisite to "special education" in this case. To rule otherwise would create the anomalous situation of a local school district redefining special education by its unwillingness to formulate an IEP for a handicapped child in a court-ordered placement. Such intransigence would also seek to shift costs in contravention of clear statutory mandates.

Because the trial court improperly defined "special education," we reverse and remand. To the extent that the disputed costs were for "special education," the plaintiff is responsible for those costs, up to the statutory limit, regardless of whether a new IEP was in place. *Cf. Alexander S. v. Boyd*, 876 F. Supp. 773, 802 (D.S.C. 1995) ("In the case of short-term, temporary confinement, the State may meet its obligation . . . by implementing the IEP from the previous school district or placement instead of developing a new one.")

The federal government requires that each State make available to all children with educational disabilities a free appropriate public education. 20 U.S.C. § 1412(1) (1994). Although requiring that such education be "free," federal law leaves to each State the decision where responsibility for funding that education lies. 20 U.S.C. § 1412(2)(B) (1994). In this State, the legislature has chosen to rest the burden on the local school district. "Whether to transfer that burden elsewhere, however, is a question for the legislature." *Nashua School Dist. v. State*, 140 N.H. 457, 463, 667 A.2d 1036, 1040 (1995).

*Reversed and remanded.*

All concurred.