728 N.E.2d 119 (2000)
312 Ill. App.3d 806
245 Ill.Dec. 388
In re D.D., a Minor (The Department of Children and Family Services, Appellant).
No. 2-99-0179.
Appellate Court of Illinois, Second District.
April 19, 2000.
James E. Ryan, Attorney General, Joel D. Bertocchi, Solicitor General, Marcia L. McCormick, Assistant Attorney General, *120 Chicago, for Department of Children & Family Services.
G. Joseph Weller, Deputy Defender and Dev A. Parikh (Court-appointed), Office of the State Appellate Defender, Elgin, for D.D.
Helen Moorman, DCFS, Vernon Hills, Guardian Ad Litem.
Michael J. Waller, Lake County State's Attorney, Waukegan, Craig Pearson, Assistant State's Attorney, Vernon Hills, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, for the People.
Justice McLAREN delivered the opinion of the court:
The appellant, the Department of Children and Family Services (DCFS), appeals an order of the trial court ordering the Department of Probation to place a minor, D.D., in Maryville Academy and ordering the DCFS to reimburse Lake County for half of the cost of placement. We affirm in part and reverse in part.
The following facts are taken from the record. D.D. was born in 1985. In 1995 D.D., his mother, older brother, younger brother, and sister became temporarily homeless. Shortly thereafter they moved to Waukegan, and D.D.'s mother received public aid.
On December 10, 1996, D.D. was found to be a delinquent minor having committed residential burglary. 720 ILCS 5/19-3(a)(West 1996). The trial court adjudged D.D. a ward of the court and put D.D. on probation for five years. The State also alleged that D.D. committed the offense of criminal damage to property (720 ILCS 5/21-1(1)(a) (West 1996)) in September 1996, but the State withdrew this petition.
A 1997 report indicated that, late in 1996 or early in 1997, D.D.'s mother became employed full time. In 1996, D.D. was diagnosed with attention deficit disorder and was prescribed medication. D.D. stopped taking the medication because his condition did not improve. D.D. received counseling, was not involved in gangs, did not use alcohol or drugs, and was involved with someone from the Big Brother's organization. However, a psychological report indicated that D.D. was attracted to negative influences like gangs, was combative, was unable to relate to other children, frequently engaged in physical fights in school, and needed a structured environment.
On April 8, 1997, the State filed a petition to revoke D.D.'s probation, alleging that D.D. committed a battery (720 ILCS 5/12-3(a)(1) (West 1996)) when he struck a girl in the head. The State later withdrew this petition.
A May 1997 report indicated that D.D.'s behavior had improved. However, on June 23, 1998, D.D. ran away from home. A warrant was issued, and D.D. was taken into custody and remanded to secure detention. A report indicated D.D.'s mother stated that she was not able to control her son and that his friends were a bad influence on him. D.D.'s parole officer reported that D.D. was out of control. D.D. was released to his mother but ran away again the following month. D.D. was again taken to secure detention and was again adjudicated a delinquent minor. The court ordered D.D.'s probation to be continued.
At an October hearing, the supervisor of juvenile probation, the public defender, and the guardian ad litem recommended a residential placement for D.D. The assistant State's Attorney agreed with this recommendation. The DCFS did not agree and recommended foster care for D.D.
On October 2, 1998, the State filed a petition for a hearing on a violation of probation, alleging that theft (720 ILCS 5/16-1(a)(2)(A) (West 1996)) occurred when D.D. stole a bicycle. At the hearing on the State's petition, Bob Schroeder, D.D.'s probation officer, opined that Maryville was the appropriate placement for D.D.
On November 12, 1998, after a hearing to determine the placement of D.D., the trial court ordered that the probation department *121 place D.D. in Maryville Academy in Durand, Illinois, a residential placement facility. The court stated that "placement in foster care, whether it's traditional, specialized, or a group home facility, based on the background and the continued runaway behavior and continued delinquent behavior by the minor [sic], and I will not allow DCFS to place [D.D.] in foster care." On November 16, 1998, D.D. was sent to Maryville Academy. The trial court ordered the Department of Probation to place D.D. at Maryville and ordered the DCFS, as guardian, to reimburse Lake County for one-half of the cost of placement.
On December 10, 1998, after a hearing, D.D. was readjudicated a delinquent minor. D.D. was made a ward of the court and placed on probation. The trial court ordered D.D. to "cooperate with and successfully complete placement at" Maryville.
Subsequently, the DCFS filed a motion to vacate the trial court's December 10, 1998, order regarding placement. At the hearing on the DCFS's motion, Assistant State's Attorney Pierson asked the court to deny the DCFS's motion. Pierson stated that the court acted within its discretion and acted in the best interests of the minor. Guardian ad litem Moorman agreed with the State's position. The trial court denied the DCFS's motion to vacate. The DCFS filed a timely notice of appeal. The State failed to file an appellee's brief.
On appeal, the DCFS argues that the trial court lacked subject matter jurisdiction and had no authority under the Juvenile Court Act of 1987(Act) (705 ILCS 405/5-1 et seq. (West 1996)) to place D.D. and order the DCFS to pay half of the cost. The DCFS argues that, since it was the child's custodian and guardian, it had the sole authority to decide which placement was in the child's best interest. The State Appellate Defender argues that the trial court had the authority to place D.D. because D.D. was a ward of the court and the Act did not limit the trial court's power to place the child in a particular facility. The appellate defender did not respond to the DCFS's argument regarding reimbursement of half of the cost of the placement.
Because this case involves the interpretation of a statute, the standard of review is de novo. See In re Adoption of L.R.B., 278 Ill.App.3d 1091, 1093, 215 Ill. Dec. 950, 664 N.E.2d 347 (1996). The purpose of the Juvenile Court Act is:
"[T]o secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; * * * and, when the minor is removed from his or her own family, to secure for him or her custody, care and discipline as nearly as possible equivalent to that which should be given by his or her parents * * *." 705 ILCS 405/1-2(1) (West 1996).
The Act is to be "liberally construed to carry out the foregoing purpose." 705 ILCS 405/1-2(4) (West 1996). After the court finds the minor guilty of an offense, it must conduct a sentencing hearing and decide whether it is in the best interest of the minor to be made a ward of the court. 705 ILCS 405/5-20 (West 1996). If the court orders wardship, the court must "determine the proper disposition best serving the interests of the minor and the public." 705 ILCS 405/2-22(1) (West 1996).
The Act grants the trial court broad authority in determining the proper disposition of a delinquent minor. See In re M.P., 297 Ill.App.3d 972, 976, 232 Ill. Dec. 223, 697 N.E.2d 1153 (1998). Nothing in the Act specifically limits the court from making specific placements. Thus, we determine, as a matter of law, that the trial court had the authority to place D.D. at Maryville.
The DCFS cites In re T.L.C., 285 Ill. App.3d 922, 221 Ill.Dec. 321, 675 N.E.2d 228 (1996), and In re Chiara C., 279 Ill. App.3d 761, 216 Ill.Dec. 344, 665 N.E.2d *122 404 (1996), to support its position. These cases are distinguishable because they discuss the limitations of the court regarding abused, neglected, or dependent minors and not delinquent minors. The statutory language that concerns abused, neglected, or dependent minors expressly prohibits the trial court from ordering a specific placement. 705 ILCS 405/2-23(3) (West 1994). However, the parallel provision that discusses the disposition of delinquent minors does not contain this limiting language or any other language that prohibits the court from ordering a specific placement. See 705 ILCS 405/5-23 (West 1996). Under the well-known maxim of construction, inclusio unius est exclusio alterius, or the inclusion of one is the exclusion of the other, it is clear that the legislature did not intend to prohibit the court from ordering a specific placement of a delinquent minor. See Schanowitz v. State Farm Mutual Automobile Insurance Co., 299 Ill.App.3d 843, 848, 234 Ill.Dec. 289, 702 N.E.2d 629 (1998). If the legislature wished to preclude circuit courts from placing delinquent minors in specific residences, it could have added language like that above to the dispositional section of article V of the Act.
Next, the DCFS argues that, even if the court had the authority to specifically place D.D., the court exceeded its authority in this case because it did not follow DCFS's rules in deciding the appropriate placement. The DCFS cites to sections of the Illinois Administrative Code which require, inter alia, the DCFS to explore less restrictive settings before placing a child in a residential placement facility. 89 Ill. Adm.Code §§ 301.10, 301.60, 301.100 (1998). The DCFS ignores the fact that these rules apply to agencies and probation officers and not to courts. See 705 ILCS 405/5-29(3) (West 1996). Thus, this argument fails.
Finally, the DCFS argues that the trial court had no authority to order the DCFS to pay 50% of the cost of D.D.'s placement at Maryville. As noted earlier, the State did not file an appellee's brief in this case, and the appellate defender did not address this issue. Because this issue is not easily decided and the appellant's brief demonstrates a prima facie case for error that is supported by the record, we reverse that part of the judgment ordering the DCFS to reimburse Lake County for 50% of the costs of D.D.'s placement without addressing the merits of the issue. See First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill.2d 128, 133, 345 N.E.2d 493 (1976).
The judgment of the circuit court of Lake County is affirmed in part and reversed in part.
Affirmed in part and reversed in part.
THOMAS and RAPP, JJ., concur.