*In re* D.D., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. D.D., Respondent (Oak Park River Forest High School, District 200, Intervening Respondent-Appellant)).

First District (3rd Division)   No. 1—01—2698

Opinion filed September 30, 2002.

John A. Relias and Julie E. Heuberger, both of Franczek Sullivan, P.C., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Helen Haynes, and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HALL delivered the opinion of the court:

The intervenor, Oak Park River Forest High School, District No. 200 (School District), appeals from an order of the circuit court of Cook County directing it to pay the educational costs of D.D., a minor, while he attends an out-of-state school.

## FACTUAL BACKGROUND

On May 13, 1999, the State filed a petition for adjudication of wardship for D.D. On July 13, 2000, the State filed a petition for supplemental relief, alleging that D.D. had not complied with the conditions of his probation imposed by the juvenile court on October 14, 1999.[1]

Subsequently, D.D. was again placed on probation. Louise Bartnicki, D.D.'s probation officer, recommended that D.D. receive residential placement, based upon the fact that D.D.'s mother was unable to get him to go to counseling, keep his appointments with the probation department or go to school. In December 2000, Judge Walsh, a juvenile court judge, entered an order placing D.D. at Heritage Center in Provo, Utah. D.D. was admitted to Heritage Center on March 7, 2001.

---

[1]The record in the juvenile court proceedings is not a part of the record on appeal. However, the parties do not dispute what took place in those proceedings.

Thereafter, the office of the public defender of Cook County filed a motion in juvenile court for an order for the care and support of D.D. The motion was scheduled for a hearing on February 28, 2001. However, the record on appeal does not contain a copy of the motion, a transcript of a hearing on that date or the order that was entered on that date.[2]

On March 8, 2001, the School District filed an objection to an order of payment for the educational component of D.D.'s court-ordered residential placement. The objection alleged the following facts.

D.D. was adjudicated a delinquent minor on October 14, 1999. At the time of his sentencing, D.D. was a resident and special education student of the Elmwood Park School District, which in turn is a member of the Leyden Area Special Education Cooperative. D.D. was receiving special education services at Elmwood High School.

On March 16, 2000, the Elmwood Park special education program team met to discuss D.D.'s educational placement. The team concluded that D.D.'s educational needs required placement in a therapeutic day school within the community, which was agreeable to both D.D. and his mother.

In January 2001, D.D.'s mother became a resident of the School District. In February 2001, the School District received a notice to appear in the juvenile court of Cook County to discuss its obligation to pay for the educational component of D.D.'s residential placement at Heritage Center.

The School District maintained that it had no obligation to pay for the educational component of a minor's residential placement when that placement is made for noneducational reasons.

## HEARING ON THE SCHOOL DISTRICT'S OBJECTION

On May 21, 2001, Judge Berman, a juvenile court judge, held a hearing on the School District's objection at which the following testimony was given.

Ronald Sesterhenn testified as follows. He is the technical assistant supervisor and manages all the special education services for District 401 in Elmwood Park. In May 1997 D.D., who was in sixth grade, was identified as behavior disordered and eligible for special education services. D.D. suffered from poor impulse control, lack of cooperation with staff, and low self-confidence and had failing grades. Once D.D. was identified as eligible for special education services, he

---

[2]Apparently there was an order entered on that date since the juvenile court referred to the February 28, 2001, order in the order entered on June 29, 2001.

then would be reviewed yearly under the "Individual Educational Program" (IEP). While D.D. was in seventh grade, his needs did not change; his grades were still failing, and attendance started becoming an issue. D.D. remained in the eighth grade for two years.

In February 2000 D.D. had his three-year reevaluation, and it was determined that he required more services through the IEP process. Given that D.D. was still failing academically, the reevaluation team felt that he required more structure, and D.D. was enrolled in a therapeutic day program at Joseph's Academy. D.D.'s attendance improved from what it had been in the past, and he was able to graduate from eighth grade, albeit with C's and D's. However, in November 2000 Mr. Sesterhenn wrote to D.D.'s mother explaining that bus service for D.D. was being discontinued because D.D. was being held in the Department of Corrections. D.D.'s attendance at Joseph's Academy had begun to drop due to unexcused absences, court appearances and his detention in jail. Even though he was discharged from Joseph's Academy, D.D. was still considered to be in need of services.

According to Mr. Sesterhenn, while D.D. was at Joseph's Academy, he received counseling to address his emotional disorders. Mr. Sesterhenn explained that at Joseph's Academy, the whole school day was involved and wrapped around meeting the emotional needs of the students there.

In December 2000 D.D.'s mother informed Mr. Sesterhenn that she had moved to Oak Park.

According to Mr. Sesterhenn, truancy is not considered a special education problem.

Louise Bartnicki, a probation officer assigned to the juvenile court, testified as follows. She was assigned D.D.'s case in October 1999 when he was placed on probation for reckless conduct. At that time, D.D. was repeating the eighth grade at Elm Middle School in Elmwood Park. While he was repeating the eighth grade, D.D. was not in compliance with the terms of his probation. He was truant quite a bit and failed to comply with counseling and drug treatment requirements. In school, he was placed on suspension, did not serve his detentions, and engaged in fighting and in general gross behavior. His academic progress was difficult to gauge because of his truancy problem. Ms. Bartnicki was not part of the team that recommended D.D.'s placement at Joseph's Academy; she was merely told by Mr. Sesterhenn that the placement was going to occur. She was invited to attend the IEP placement review with D.D.

According to Ms. Bartnicki, it was difficult to determine if D.D.'s behavior improved at Joseph's Academy because of his absences and truancy. D.D. was not in compliance with the terms of his probation

order since he continued to be absent from school, did not comply with TASC (Treatment Alternatives for Special Clients), and did not do his community service or go to counseling. D.D. was in juvenile detention sometime in late June or early July 2000 for a couple of weeks, and then again in November 2000, at which time he was held until placement was made. However, his truancy problems were not a direct result of his being in detention.

At this point, Judge Berman interjected that the common law record showed that D.D. was in detention as of October 6, 2000, and remained there until placement and that there were two different detention periods, one of which was about two weeks and the other of which was about a week when he was held in custody and then released.

Ms. Bartnicki reiterated that D.D. continued to have absentee problems even when he was not in detention, with some of the absences excused and others, unexcused. D.D. was incarcerated for violating his probation, and there was also an immediate threat that he would harm himself and use drugs. Ms. Bartnicki made no recommendations for alternative placements for D.D. through the school. However, she did recommend therapeutic residential placement for D.D. before Judge Walsh in view of D.D.'s continued problems with attendance at school, going to counseling and keeping his probation appointments. Had D.D. attended Joseph's Academy on a consistent basis and complied with probation and counseling requirements, he might have been "okay" there, but he was not doing that.

Kevin Hickey, supervisor of the advocacy unit of the Cook County Juvenile Probation Department, testified as follows.

D.D. was recommended for residential placement as the result of several violations of probation and a clinical evaluation conducted in August 2000 which recommended residential placement. Judge Walsh determined that as part of D.D.'s sentence, D.D. was to be residentially placed, and the case was referred to the probation department for placement. In making the determination of residential placement for D.D., Mr. Hickey reviewed the social investigation report by Ms. Bartnicki, the clinical evaluation and the school records from Leyden School District.

Based on these records, Mr. Hickey determined that D.D. required more structure in the home and community; he had educational needs; he continued to have truancy and discipline problems at Joseph's Academy; there were drug use concerns; and he needed individual and family counseling. Heritage Center in Utah was chosen for D.D. Heritage Center is a facility for troubled minors, not necessarily delinquent, and offers individual, group, and family counseling and

recreational therapy for children, as well as addressing educational needs. Other minors with special education needs had been placed at Heritage Center.

Mr. Hickey understood that D.D. would be provided with special education services at Heritage Center, which would include six hours of education a day in a special education classroom, and he would receive individual attention in that classroom to meet his special needs. Based upon his review of the IEP and D.D.'s history of lack of motivation, Mr. Hickey believed that Heritage Center was appropriate.

Mr. Hickey monitors D.D.'s progress at Heritage Center through monthly reports, as well as telephone conferences with D.D. and his therapist. While Mr. Hickey stated that, at the present time, D.D. is doing fairly well, he acknowledged that D.D. is having some difficulty with his peers. At first, his academic progress was good, and he was maintaining high grades. However, it was reported that he had not completed the work in one class and had fallen asleep in an independent study course. Nevertheless, Mr. Hickey believed that D.D. continued to need the structure, therapy and counseling that Heritage Center affords him. In Mr. Hickey's opinion, D.D. is making more progress than at Joseph's Academy because he can attend school on a regular basis in an environment in which he can excel.

Mr. Hickey related that the lowest grade that D.D. had received at Heritage Center was a C-; the rest of his grades were A's and B's. According to Mr. Hickey, Heritage Center would be considered a secure facility with D.D.'s attendance and residence there well monitored, although it was possible for him to run away from there.

In response to Judge Berman's questions in clarification, Mr. Hickey explained that D.D. was placed at Heritage Center for a variety of reasons. In the past, when a minor had special education needs, a portion of the placement cost was paid by the minor's school district. In D.D.'s case, the tuition is $70 per each day that school is in session.

On June 15, 2001, Judge Berman ruled that the School District was liable to pay the educational component of D.D.'s residential placement. On June 29, 2000, Judge Berman entered an order requiring the School District to provide payment to Heritage Center for D.D.'s education costs. The juvenile court further ordered that the order be *nunc pro tunc* March 7, 2001, the date D.D. was placed at Heritage Center.

The School District filed its notice of appeal on July 17, 2001.

## ISSUES

On appeal the School District raises the following issues: whether the juvenile court had jurisdiction to order a School District to pay the

educational component of a delinquent minor's out-of-state placement; and, in the event that jurisdiction is found, whether the juvenile court's order requiring the School District to pay the educational component of D.D.'s residential placement was proper. Before proceeding to the merits of these issues, we first address the State's contention that we lack jurisdiction over this appeal.

## ANALYSIS

### I. Whether This Court Has Jurisdiction of the School District's Appeal in This Case

During the pendency of this appeal, the State filed a motion to dismiss for lack of jurisdiction, which we ordered taken with this case. At oral argument, the State raised a second basis for its jurisdictional challenge to the School District's appeal.

The State contends that the order of June 29, 2001, was not a final and appealable order because the case remains active for purposes of regular status reports as to D.D.'s progress at Heritage Center, as well as his compliance with the terms of his probation. The State further maintains that the June 29, 2001, order does not contain the requisite language to make it appealable pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Finally, in oral argument, the State raised the argument that the School District's appeal should have been brought pursuant to the supreme court rules applicable to criminal appeals and not pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303), a rule applicable to civil appeals.

■ Except where a supreme court rule provides for an interlocutory appeal, the appellate court has jurisdiction to review only final judgments. *In re J.N.*, 91 Ill. 2d 122, 126, 435 N.E.2d 473, 475 (1982). A judgment is final if it decides the controversy between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but proceed with its execution. *J.N.*, 91 Ill. 2d at 127, 435 N.E.2d at 475.

■ A disposition order from the juvenile court is generally considered final and appealable. *In re Brandon S.*, 331 Ill. App. 3d 757, 760, 771 N.E.2d 1117, 1120 (2002). Any " 'matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order.' " *Brandon S.*, 331 Ill. App. 3d at 761, 771 N.E.2d at 1120, quoting *In re T.M.*, 302 Ill. App. 3d 33, 37, 706 N.E.2d 931, 934 (1998).

In this case, the disposition order was entered on October 14, 1999, at which time D.D. was placed on probation based upon the finding of delinquency. Thereafter, the dispositional order was modified to allow D.D. to be placed at Heritage Center, while his probation was continuing.

The June 29, 2001, order was a final order as to the School District's obligation to pay for the educational component of D.D.'s residential placement. All that remained was enforcement of the order. The order also provided that the order of February 28, 2001, remained in full force and effect until further order of the court. In other words, for review of D.D.'s status and a determination if further modification of the dispositional order was necessary. However, the fact that the dispositional order is subject to future modification as regards D.D.'s future does not make the June 29, 2001, order nonfinal since the order resolved the issue of whether the School District had to pay the educational component of D.D.'s residential placement. Compare *Brandon S.*, 331 Ill. App. 3d at 761, 771 N.E.2d at 1120-21 (parents who failed to appeal from the dispositional order could not appeal from the denial of their request to modify the disposition order because the disposition did not change, and the order appealed from did not permanently determine the rights of the parties or definitely resolve any issue in the case).

The cases relied on by the State are distinguishable. In *In re L.S.*, 318 Ill. App. 3d 566, 742 N.E.2d 760 (2000), the reviewing court held that the court-appointed attorney could not appeal from the denial of certain portions of his fee petition. The minors in the case had been adjudicated abused and neglected, but the attorney's client, the mother of the minors, had fled the jurisdiction. The underlying matter was continuing, and there is no indication that a dispositional order was entered in the case.

In *In re Guzik*, 249 Ill. App. 3d 95, 617 N.E.2d 1322 (1993), the order appealed from, which found the respondent to be a person subject to involuntary admission, was a nonfinal order since the order stated that the court would enter a commitment order at a later date. In the present case, the dispositional order placed D.D. on probation; all that was left to do was to execute the order. See *In re J.N.*, 91 Ill. 2d at 128, 435 N.E.2d at 476 (placing the minor on supervision was a final order because all that remained to be done by the court was to execute the judgment).

Assuming that the June 29, 2001, order was final for purposes of appeal, the State then argues that the order is not appealable because the juvenile court made no finding pursuant to Supreme Court Rule 304(a) that there was no just reason to delay appeal or enforcement of the June 29, 2001, order. The State maintains that the language of the June 29, 2001, order clearly shows that the juvenile court maintained jurisdiction over the case, and therefore, it was necessary for the juvenile court to make a Rule 304(a) finding in order for the School District to appeal the June 29, 2001, order.

■ Appeals in juvenile cases are governed by Rule 660, which provides as follows:

"**(a) Delinquent Minors.** Appeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases.

**(b) Other Proceedings.** In all other proceedings under the Juvenile Court Act, appeals from final judgments shall be governed by the rules applicable to civil cases." 134 Ill. 2d R. 660.

■ The order appealed from in this case was entered in a delinquency proceeding, and therefore, this case is governed by the rules applicable to criminal appeals. But see *In re D.M.A.*, 136 Ill. App. 3d 1027, 483 N.E.2d 1022 (1985) (appeal of mother's supplemental petition for guardianship of a delinquent minor was not an appeal from a final judgment of delinquency, and the civil appeal rules applied).[3]

Rule 304(a) is not applicable to criminal appeals. See 177 Ill. 2d R. 612. Therefore, it is inapplicable to the case before us.

We granted the State's motion to cite as additional authority *In re J.R.*, 307 Ill. App. 3d 175, 717 N.E.2d 468 (1999). In that case, the appellate court held that regardless of whether civil or criminal appeal rules applied, Rule 304(a) was not applicable to the minor's appeal because no matters were pending before the trial court at the time of the appeal. However, in this case, we have determined that Rule 304(a) does not apply because this appeal is governed by the criminal appeal rules.

In the alternative, the State then maintains that the School District was required to bring its appeal pursuant to the rules applicable to criminal cases rather than civil cases.

Rule 303, relied on by the School District as the basis for this court's jurisdiction, is also not one of the civil appeal rules applicable to criminal appeals. See 177 Ill. 2d R. 612. Nonetheless, the School District's failure to cite the correct rule is not fatal to its appeal to this court.

■ Supreme Court Rule 606(a) (188 Ill. 2d R. 606(a)), applicable to criminal appeals, provides that in all cases, other than those in which a sentence of death has been imposed, appeals are perfected by filing a notice of appeal with the clerk of the trial court. Generally, the filing of the notice of appeal is the only jurisdictional step required to perfect

---

[3]However, Rule 660(a) (134 Ill. 2d R. 660(a)) specifies "final judgments in delinquent minor proceedings" not a "final judgment of delinquency" as stated by the court in *D.M.A. D.M.A.*, 136 Ill. App. 3d at 1029, 483 N.E.2d at 1024.

an appeal. *People v. Jackson*, 239 Ill. App. 3d 165, 166, 606 N.E.2d 809, 810 (1992). In this case, the School District timely filed its notice of appeal in the trial court. The School District having perfected its appeal, this court has jurisdiction over this appeal. See *In re O.H.*, 329 Ill. App. 3d 254, 257, 768 N.E.2d 799, 801 (2002) (State not prejudiced by the fact that the respondent appealed under the civil appeal rules rather than the applicable criminal appeal rules, and appellate jurisdiction was properly invoked).

We therefore deny the State's motion to dismiss this appeal for lack of jurisdiction and turn to the issues raised by the School District.

## II. Jurisdiction of the Juvenile Court

### A. Standard of Review

■ Because this case involves the interpretation of a statute, the standard of review is *de novo*. *In re D.D.*, 312 Ill. App. 3d 806, 809, 728 N.E.2d 119, 121 (2000).

### B. Statutory Authority

At the heart of the controversy in this case are two separate statutory schemes, namely, the School Code (105 ILCS 5/1—1 *et seq.* (West 2000)) and the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1—1 *et seq.* (West 2000)).

### 1. School Code

The School Code requires that the State Board of Education promulgate rules to insure that children with disabilities are provided with a free appropriate public education. 105 ILCS 5/14—8.02(a) (West 1998). Pertinent to our review in this case are the provisions of the School Code governing the payment of educational expenses.

■ Section 14—7.02, which applies to children attending private schools, public out-of-state schools, public school residential facilities or private special education facilities, provides as follows:

"If because of his or her disability the special education program of a district is unable to meet the needs of a child and the child attends a non-public school or special education facility,[4] *** the school district in which the child is a resident shall pay the actual cost of tuition for special education and related services provided during the regular school term and during the summer school term if the child's educational needs so require, excluding room, board

---

[4]Under section 14—7.02, " 'Nonpublic special education facility' shall include a residential facility, within or without the State of Illinois, which provides special education and related services to meet the needs of the child ***." 105 ILCS 5/14—7.02 (West 2000).

and transportation costs charged the child by that non-public school or special education facility, *** or $4,500 per year, whichever is less, and shall provide him any necessary transportation." 105 ILCS 5/14—7.02 (West 2000).

Section 14—7.02 further provides as follows:

"Any educational or related services provided, pursuant to this Section in a non-public school or special education facility or a special education facility owned and operated by a county government unit shall be at no cost to the parent or guardian of the child." 105 ILCS 5/14—7.02 (West 2000).

Section 14—7.03, which is applicable to children from orphanages, foster homes, children's homes, or in-state housing units, provides in pertinent part as follows:

"Commencing July 1, 1992, for each disabled student who is placed residentially by a State agency or the courts for care or custody or both care and custody, welfare, medical or mental health treatment or both medical and mental health treatment, rehabilitation, and protection, *** the costs for educating the student are eligible for reimbursement under this Section providing the placing agency or court has notified the appropriate school district authorities of the status of student residency where applicable prior to or upon placement.

The district of residence of the parent, guardian, or disabled student as defined in Sections 14—1.11 [(105 ILCS 5/14—1.11 (West 2000))] and 14—1.11a [(105 ILCS 5/14—1.11a (West 2000))] is responsible for the actual costs of the student's special education program and is eligible for reimbursement under this Section when placement is made by a State agency or the courts." 105 ILCS 5/14—7.03 (West 1998).

## 2. Juvenile Court Act

■ After a minor is found guilty of an offense, the court must conduct a sentencing hearing and decide if it is in the best interest of the minor to be made a ward of the court. 705 ILCS 405/5—620 (West 2000). If the court determines that it is in the best interest of the minor that he be made a ward of the court, then the court shall determine the proper disposition best serving the interests of the minor and the public. 705 ILCS 405/5—705 (West 2000). As part of a minor's sentence, the court may order the minor placed in accordance with section 5—740, with or without being placed on probation or court supervision. 705 ILCS 405/5—710 (West 2000).

Section 5—740 (705 ILCS 405/5—740 (West 2000)) provides in pertinent part as follows:

"(1) If the court finds that *** it is in the best interest of the

minor to take him or her from the custody of his or her parents, guardian or custodian, the court may:

* * *

(c) commit him or her to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

***

(e) commit him or her to any appropriate institution having among its purposes the care of delinquent children, including a child protective facility maintained by a child protection district serving the county from which commitment is made, but not including any institution under the authority of the Department of Corrections or of the Department of Children and Family Services.

* * *

(4) No placement by any probation officer or agency whose representative is appointed guardian of the person or legal custodian of a minor may be made in any out of State child care facility unless it complies with the Interstate Compact on the Placement of Children." 705 ILCS 405/5—740(1)(c), (1)(e), (4) (West 2000).

## C. Discussion

The School District contends that the juvenile court did not have jurisdiction to order it to pay for D.D.'s educational expenses at Heritage because the School District was never served with summons and a copy of the petition in the underlying delinquency petition. While the School District concedes that it was notified of the proceeding to hold it financially accountable for D.D.'s educational costs, it's complaint is that it was not made a party to the proceedings in which D.D.'s placement at Heritage was determined. As a result, the School District argues, it was prohibited from carrying out its obligations in connection with D.D.'s special education needs.

■ The failure to name and serve a necessary party in a juvenile proceeding raises the question, not of personal jurisdiction over that party, but of the subject matter jurisdiction of the court. *In re K.C.*, 323 Ill. App. 3d 839, 846, 753 N.E.2d 314, 319 (2001).

Relying on *In re C.R.H.*, 163 Ill. 2d 263, 271, 644 N.E.2d 1153, 1157 (1994), the School District maintains that it was a necessary party to the delinquency proceedings and that as it was not named or notified of the delinquency proceeding, the jurisdiction of the juvenile court was not invoked, rendering its orders void. However, in *C.R.H.*, the supreme court referred to "necessary respondents" as including

"parents or a legal guardian." *C.R.H.*, 163 Ill. 2d at 271, 644 N.E.2d at 1157.

■ Section 5—525 of the Juvenile Court Act provides that upon the commencement of a delinquency prosecution, a summons with a copy of the petition attached "shall be directed to the minor's parent, guardian or legal custodian and to each *person* named as a respondent in the petition." (Emphasis added.) 705 ILCS 405/5—525 (West 2000). In addition, section 1—5(2)(a) of the Juvenile Court Act specifically provides as follows:

> "Though not appointed guardian or legal custodian or otherwise made a party to the proceeding, any current or previously appointed foster parent or relative caregiver, or representative of an agency or association interested in the minor has the right to be heard by the court, *but does not thereby become a party to the proceeding.*" (Emphasis added.) 705 ILCS 405/1—5(2)(a) (West 2000).[5]

We conclude, therefore, that the School District was not a necessary party to the delinquency proceedings, and the juvenile court's order requiring it to pay the educational portion of D.D.'s placement at Heritage was not void on that basis.

Next, the School District contends that the juvenile court exceeded its subject matter jurisdiction in entering the order requiring it to pay for D.D.'s education expenses.

■ We note that the School District first raised this specific argument in its reply brief. Nonetheless, " '[a]ny action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time.' " *In re A.H.*, 195 Ill. 2d 408, 416, 748 N.E.2d 183, 189 (2001), quoting *In re Estate of Gebis*, 186 Ill. 2d 188, 193, 710 N.E.2d 385, 387 (1999).

■ Subject matter jurisdiction refers to the court's power both to adjudicate the general question involved and to grant the particular relief requested. *A.H.*, 195 Ill. 2d at 415, 748 N.E.2d at 188 (2001). With limited exceptions, the circuit courts enjoy " 'original jurisdiction of all justiciable matters.' " [Citation.]" *A.H.*, 195 Ill. 2d at 415, 748 N.E.2d at 188. The legislature may create a justiciable matter by creating rights and duties that had no counterpart in common law or equity. *A.H.*, 195 Ill. 2d at 415, 728 N.E.2d at 188.

■ The scope and application of the Juvenile Court Act are defined solely by the legislature; there is no counterpart in common

---

[5]In contrast, under section 1—5(2)(a), in the case of an abused or neglected minor, any current foster parent, relative caregiver of a minor and the agency acting as custodian of the minor is entitled to notice of all the proceedings and may bring a *mandamus* action to enforce that right. 705 ILCS 405/1—5(2)(a) (West 2000).

law or equity. *In re Vanessa C.*, 316 Ill. App. 3d 475, 479, 736 N.E.2d 593, 596 (2000). Because a justiciable matter is statutorily derived, the legislature may define it in such a way as to limit or preclude the circuit court's authority. *A.H.*, 195 Ill. 2d at 416, 748 N.E.2d at 189. Where a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction. *Vanessa C.*, 316 Ill. App. 3d at 479, 736 N.E.2d at 596. Therefore, it is axiomatic that courts exercising jurisdiction over the Juvenile Court Act must proceed within the strictures of the statute. *Vanessa C.*, 316 Ill. App. 3d at 479, 736 N.E.2d at 596. Acts of the court that exceed the bounds of its subject matter jurisdiction are void. *Vanessa C.*, 316 Ill. App. 3d at 479, 736 N.E.2d at 596.[6]

■ Under the Act, the court has the authority to make a placement decision as to a delinquent minor, including committing him to an agency for placement or an institution appropriate for delinquent minors. See 705 ILCS 405/5—740(1)(c), (1)(e) (West 2000). In regard to placements made pursuant to section 5—740, the Act provides as follows:

> "Any sentencing order where the minor is committed or placed in accordance with Section 5—740 shall provide for the parents or guardian of the estate of the minor to pay to the legal custodian or guardian of the person of the minor such sums as are determined by the custodian or guardian of the person of the minor as necessary for the minor's needs. The payments may not exceed the maximum amounts provided for by Section 9.1 of the Children and Family Services Act [(20 ILCS 505/9.1 (West 2000))]." 705 ILCS 405/5—710(5) (West 2000).

Additional sections of the Act provide for the county to make payments for the minor's care and support to the person or agency that is the minor's appointed guardian or legal custodian (705 ILCS 405/6—8(2) (West 2000)) and for payment by "a parent or any other person named in the petition" of a reasonable sum for the "care, support and necessary special care or treatment of the minor." 705 ILCS 405/6—9 (West 2000). Finally, section 6—10(a) provides for state reimbursement of funds expended by the county for minors placed pursuant to section 5—740. See 705 ILCS 405/6—10(a) (West 2000).

Under the above statutory provisions, the legislature has given the

---

[6]In the recent case of *In re K.C.*, 325 Ill. App. 3d 771, 759 N.E.2d 15 (2001), the court, relying on *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996), held that because the circuit court's jurisdiction is constitutional, its subject matter jurisdiction is not limited by the Juvenile Court Act. *K.C.*, 325 Ill. App. 3d at 776, 759 N.E.2d at 20. However, that holding is contrary to the supreme court's language in *A.H.*

juvenile court the authority to order payment of a delinquent minor's expenses in connection with his residential placement. Therefore, we conclude that the juvenile court in this case had the jurisdiction to enter orders for payment of D.D.'s educational expenses at Heritage Center. Compare *A.H.*, 195 Ill. 2d at 420, 748 N.E.2d at 191 (while no provision in the Act addressed the specific situation before the court, the Act did authorize the court to enter orders relating to the minor's custody).

Having determined that the juvenile court had subject matter jurisdiction to enter an order for the payment of D.D.'s educational expenses, we must determine whether the court may order the School District to make such payment. See *A.H.*, 195 Ill. 2d at 420, 748 N.E.2d at 191 (after determining that the court had jurisdiction to enter the orders, it must be determined under what circumstances and standard the court might do so).

■ The constitutional source of a circuit court's jurisdiction does not carry with it a license to act in ways inconsistent with controlling statutory law. *Lawrence M.*, 172 Ill. 2d at 529, 670 N.E.2d at 714.

■ As the various sections of the Act set forth above make clear, it is the parents or the legal guardian of the minor or, in certain instances, the county, who is initially responsible for the payment of a delinquent minor's needs. See 705 ILCS 405/5—710, 6—8(2), 6—9, 6—10 (West 2000). The authority to place the delinquent minor at Heritage Center did not give the juvenile court the right to order the School District to pay for the educational component in light of the statutory provisions setting forth the parties who are responsible for the minor's care, which did not include the School District. Thus, in ordering the School District to pay for the delinquent minor's educational needs, the juvenile court violated the statutory provisions.

The case relied on by the juvenile court and the State is distinguishable. *Board of Education of Oak Park & River Forest High School District No. 200 v. Illinois State Board of Education*, 21 F. Supp. 2d 862 (N.D. Ill. 1998), was a suit brought by the school district after an administrative decision was made requiring the school district to reimburse the parents of a student, Kelly E., for the costs of her education at an out-of-state school where Kelly E.'s mother had placed her. The district court ordered the school district to reimburse Kelly E.'s parents for her tuition costs and related expenses. The reimbursement decision was made pursuant to the review procedure set forth in section 14—8.02 of the School Code. 105 ILCS 5/14—8.02 (West 1998). As

Kelly E.'s placement was not made pursuant to a delinquency determination, the jurisdiction of the juvenile court was not at issue.[7]

In *Ashland School District v. New Hampshire Division for Children, Youth & Families*, 141 N.H. 45, 681 A.2d 71 (1996), the minor was placed at a youth center as the result of delinquency proceedings. The reviewing court reversed the lower court decision finding that the defendant was solely responsible for the educational component of the minor's placement and held that the school district was responsible for the special education costs of the minor at the youth center. However, in that case, the New Hampshire statute required joinder of the legally liable school district in the juvenile proceedings, "if the court contemplates a residential placement." *Ashland School District*, 141 N.H. at 48, 681 A.2d at 73.[8]

Unlike the New Hampshire statute, the Illinois Act does not provide for the joinder of the school district in cases where residential placement is being considered for a delinquent minor and does not grant the juvenile court the power to require a school district to pay for the education component of a delinquent minor's residential placement.

Finally, we conclude that section 14—7.03 of the School Code does not support the State's position in this case. That section merely provides for eligibility for reimbursement where the court has notified the School District, either prior to or upon placement. Nothing in that section permits the juvenile court to order reimbursement by a school district for a delinquent minor. See 105 ILCS 5/14—7.03 (West 1998).

---

[7]The district court also ordered the Illinois State Board of Education (ISBE) to reimburse the school district in accordance with its existing formula for approved placements and to share equally in any award of attorney fees and costs made to the plaintiffs. On appeal, the 7th Circuit vacated that portion of the judgment requiring the ISBE to reimburse Oak Park for any of the education costs and the attorney fees paid to the minor's parents. *Board of Education of Oak Park & River Forest High School District No. 200 v. Kelly E.*, 207 F.3d 931 (7th Cir. 2000).

[8]The court in *Ashland School District* noted that in the prior case of *In re Todd P.*, 127 N.H. 792, 509 A.2d 140 (1986), the state statute granted the juvenile court the authority to issue a liability order against a school district for educational expenses. However, joinder of the legally liable school district was permissive rather than required. The court held that the school district's lack of participation in the minor's placement by the juvenile court allowed the school district to evade its financial responsibility for the minor's education. Following that decision, the statute was amended to require joinder if a residential placement was under consideration. *Ashland School District*, 141 N.H. at 48, 681 A.2d at 73.

We conclude that, while the juvenile court had subject matter jurisdiction to order the payment of the educational component of D.D.'s out-of-state residential placement, in light of the provisions of the Act denoting who was responsible for a delinquent minor's expenses, the court may not order the School District to pay D.D.'s educational expenses. We therefore do not reach the issue of whether the State is entitled to reimbursement of D.D.'s educational expenses from the School District.[9]

The judgment of the circuit court is reversed.

Reversed.

CERDA and SOUTH, JJ., concur.

---

[9]Under section 14—7.02, D.D.'s educational and related expenses are to be at no cost to his parents or guardian since he attends a "non-public or special educational facility" which includes "a residential facility within or without the State of Illinois." 105 ILCS 5/14—7.02 (West 2000).