CARBONDALE COMMUNITY HIGH SCHOOL DISTRICT No. 165, Plaintiff-Appellee, v. HERRIN COMMUNITY UNIT SCHOOL DISTRICT No. 4 *et al.*, Defendants-Appellants.

Fifth District   No. 5—98—0275

Opinion filed March 25, 1999.

W.A. Armstrong, of Law Offices of Armstrong & Green, of Marion, for appellants.

John A. Relias and Thomas Koutsouvas, both of Franczek & Sullivan, P.C., of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Herrin Community Unit School District No. 4 and David W. Hindman (Herrin) appeal from a judgment of the circuit court of Jackson County awarding reimbursement to Carbondale Community High School District No. 165 (Carbondale) for services rendered to a youth (D.E.) expelled from Herrin for a drug-related offense. D.E. received educational services from Carbondale rendered at a residential treatment program located within the borders of the Carbondale district. For the reasons stated below, we affirm the judgment of the circuit court.

## I. FACTS

Carbondale and Herrin stipulated to the essential facts before the circuit court. D.E., a resident of the Herrin school district, was attending Herrin High School in the school year of 1996-97. He was expelled for knowingly possessing and using a controlled substance on school grounds. The term of the expulsion was from June 24, 1997, through the end of the 1997-98 school year—June 5, 1998. In August of 1997, D.E. was enrolled for treatment at the Gateway Youth Care Center (Gateway), a residential program located within the Carbondale district. Gateway is a private, for-profit treatment facility which deals with drug and alcohol dependencies. While he was in Gateway, Carbondale provided D.E. with educational services for a period of eight days and subsequently requested that Herrin reimburse it for tuition in the amount of $239.84. Herrin refused this request.

After the refusal, Carbondale filed a small claims complaint against Herrin in the circuit court of Jackson County. After the aforesaid stipulation of facts and argument on the law, the circuit court, in a bench

trial, issued an order granting judgment for Carbondale and against Herrin, the relevant portions of which are as follows:

"1. With respect to the obligation to pay for the educational services provided to Herrin Community Unit School District resident [D.E.] at the Gateway Youth Care Treatment Center, the fourth paragraph of Section 10—20.12a of the Illinois School Code [105 ILCS 5/10—20.12a (West 1996)] specifically addresses the pertinent facts.

2. Section 10—20.12a states that 'educational services . . . in a residential program designed to correct alcohol or drug dependencies shall be provided . . . and financed as follows. The cost shall be paid by the district in which the student resides.'

3. The program at the Gateway Youth Care Treatment Center qualifies as a residential program within the meaning of Section 10—20.12a.

4. Accordingly, it is hereby ordered that Herrin Community Unit School District No. 4 pay Carbondale Community High School District No. 165 the amount of $239.84. This amount represents the cost of educational services provided to [D.E.] at the Gateway Youth Care Treatment Center."

Herrin timely appealed.

## II. STANDARD OF REVIEW

Herrin argues, and Carbondale does not contest, that the standard of review is *de novo*.

## III. ANALYSIS

This litigation provides a classic example of statutes that potentially conflict and the necessity for the courts to determine the legislative intent behind each and reconcile them. Herrin argues that since D.E. was properly expelled pursuant to section 2—3.13a of the School Code (105 ILCS 5/2—3.13a (West 1996)), it is not required to reimburse Carbondale for its educational expenses. In pertinent part, this section reads as follows:

"The State Board of Education shall establish and implement rules requiring all of the public schools and all private or nonpublic elementary and secondary schools located in this State, whenever any such school has a student who is transferring to any other public elementary or secondary school located in this or any other state, to forward within 10 days of notice of the student's transfer an unofficial record of that student's grades to the school to which such student is transferring. Each public school at the same time also shall forward to the school to which the student is transferring the remainder of the student's school student records as required by the Illinois School Student Records Act. *In addition, if a student*

*is transferring from a public school from which the student has been suspended or expelled* for knowingly possessing in a school building or on school grounds a weapon as defined in the Gun Free Schools Act [citation], *for knowingly possessing, selling, or delivering in a school building or on school grounds a controlled substance or cannabis, or for battering a staff member of the school, and if the period of suspension or expulsion has not expired at the time the student attempts to transfer into another public school in the same or any other school district*; (i) any school student records required to be transferred shall include the date and duration of the period of suspension or expulsion; and (ii) with the exception of transfers into the Department of Corrections school district, *the student shall not be permitted to attend class in the public school into which he or she is transferring until the student has served the entire period of the suspension or expulsion imposed by the school from which the student is transferring*. Each public school and each private or nonpublic elementary or secondary school in this State shall within 10 days after the student has paid all of his or her outstanding fines and fees and at its own expense forward an official transcript of the scholastic records of each student transferring from that school in strict accordance with the provisions of this Section and the rules established by the State Board of Education as herein provided." (Emphasis added.) 105 ILCS 5/2—3.13a (West 1996).

Carbondale pursued its claim on the basis of section 10—20.12a of the School Code (105 ILCS 5/10—20.12a (West 1996)), the pertinent part of which reads as follows:

"Unless otherwise agreed to by the parties involved and where the educational services are not otherwise provided for, educational services for an Illinois student under the age of 21 in a residential program designed to correct alcohol or other drug dependencies shall be provided by the district in which the facility is located and financed as follows. *The cost of educational services shall be paid by the district in which the student resides in an amount equal to the cost of providing educational services in a treatment facility. Payments shall be made by the district of the student's residence and shall be made to the district wherein the facility is located* \*\*\*." (Emphasis added.)

The parties do not contest that both the trial court and a court of review are mandated to choose interpretations of these statutes that allow both to stand. See *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 644 N.E.2d 1159 (1994); *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 619 N.E.2d 137 (1993). Herrin further argues that the trial court erred in choosing to rely solely on the tuition stat-

ute and ignoring the expulsion statute. It argues that if D.E. is still entitled to public education, merely the provider has been changed, and it argues that the expulsion statute precludes attendance by a youth in any public school class until the term of expulsion has been served. It argues that the reasonable interpretation of this statute is that an expelled student is, therefore, not to be provided with educational services by any public school district until that term of expulsion has been completed and that, therefore, Carbondale is not entitled to reimbursement for providing said services. Carbondale argues that the language of the tuition statute is plain and unequivocal and does not provide an exception for expelled youths. It further argues that D.E. did not attend classes in Carbondale and did not transfer into the district. Carbondale argues, rather, that the intent of the legislature is the provision of educational services to those youths who are in residential treatment, not the preclusion of those services, and that Herrin's interpretation would render the tuition statute a nullity. Carbondale argues that its interpretation would avoid rendering either statute a nullity and without effect. Herrin, in its reply, notes that Carbondale's approach would end up costing the expelling school district more from tuition than it would to keep the offender in school and that, accordingly, expulsion should be the "otherwise provided for" aspect of educational service.

We conclude that Carbondale's interpretation of these two statutes more closely gives effect to their plain language and the legislative intent in the passage of both. We agree that the statutes need to be read together without negating each other. Upon reading them together, we hold that the statutes do not conflict.

When a youth such as D.E. is expelled from one school district and, while being enrolled in a residential treatment facility, receives educational services from another district, that youth is not attending a public school; he is receiving educational services. The intent of the expulsion statute is to bar an offending youth from public school attendance, thereby protecting the general population of students by preventing the expelled youth from the opportunity to continue his dangerous activities, and that intent is served by the physical expulsion of the offending student. It does not conflict with the legislative intent that another district should provide educational services to a youth who is actually getting help in a treatment facility, rather than just sitting out his period of expulsion. Since those educational facilities are provided in a facility other than a public school setting, the intent of the expulsion statute is not circumvented. The youth receiving educational services in the other district is still barred from mixing in the general school population of either district. Furthermore,

the operation of the tuition statute in this circumstance is narrow rather than broad. It mandates reimbursement only in the limited and positive circumstance of a student receiving help for the problem that got him expelled.

The result of the circuit court's ruling, which we affirm, coincides with the legislative intent of both statutes. The expelled youth would be barred from the general school populations of both the expelling school district and the service-providing district, and the tuition costs to the providing district for providing educational services to a youth actually enrolled in treatment would be reimbursed. Reading these statutes together, the legislature could reasonably intend that the result would be a student returning after his period of expulsion less likely to commit further offenses and the reimbursement of the providing district for educational services rendered while that student was in rehabilitation. Such a reading does not result in rendering either statute a nullity but rather gives effect to the legislative intent of both.

Accordingly, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

HOPKINS and MAAG, JJ., concur.