819 N.E.2d 300 (2004)
212 Ill.2d 410
289 Ill.Dec. 143
In re D.D., a Minor (The People of the State of Illinois, Appellant, v. D.D. (Oak Park-River Forest High School District 200, Appellee)).
No. 96467.
Supreme Court of Illinois.
September 23, 2004.
Rehearing Denied November 22, 2004.
*301 Lisa Madigan, Attorney General, Springfield, Richard A. Devine, State's Attorney, Chicago (Linda Woloshin, Assistant Attorney General, Chicago, Patrick T. Driscoll, Jr., Helen Haynes, Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for appellant.
John A. Relias, Julie E. Heuberger, of Franczek Sullivan, P.C., Chicago, for appellee.
Justice KILBRIDE delivered the opinion of the court:
In this case we determine whether a trial court has the authority to order a school district to pay the educational portion of a delinquent minor's residential placement. D.D. was adjudicated a delinquent minor and was placed on probation. Subsequently, the juvenile court placed D.D. at the Heritage Center (the Center) in Utah. Oak Park-River Forest High School District 200 (Oak Park or the school district), D.D.'s resident school district, objected to an order compelling it to pay for the educational component of D.D.'s residential placement at the Center. The appellate court reversed, finding that the juvenile court lacked authority under the School Code (Code) (105 ILCS 5/1-1 et seq. (West 1998)) and the Juvenile Court Act of 1987(Act) (705 ILCS 405/1-1 et seq. (West 1998)) to order Oak Park to pay for the educational component of D.D.'s residential placement. 337 Ill.App.3d 998, 272 Ill.Dec. 706, 788 N.E.2d 10. We affirm.

BACKGROUND
The State filed a petition for adjudication of wardship on May 13, 1999, arising from D.D.'s reckless conduct in igniting and throwing firecrackers, endangering the safety of others. D.D. was adjudicated delinquent, and probation was imposed on *302 October 14, 1999. On July 13, 2000, the State filed a petition for supplemental relief, alleging that D.D. had not complied with the conditions of his probation. D.D. was again placed on probation. D.D.'s probation officer recommended that D.D. receive a residential placement because D.D.'s mother was unable to secure his attendance at school, counseling, or probation department appointments. In November 2000, the juvenile court apparently entered an order extending D.D.'s probation with the additional condition of residential placement. While there is no written order in the record on appeal, a docket sheet entry dated November 2, 2000, indicates that a finding of a probation violation was entered along with an extension of probation for 18 months and the condition of "[residential] placement." A docket sheet entry of December 6, 2000, shows that D.D. was accepted at the Center. D.D. was admitted to the Center on March 7, 2001.
The public defender's office of Cook County filed a motion in juvenile court, requesting an order for the care and support of D.D. Subsequently, in approximately February 2001, Oak Park received a notice to appear in the juvenile court of Cook County, regarding Oak Park's potential obligation to pay for the educational portion of D.D.'s residential placement.
At the time of his original adjudication as a delinquent minor, D.D. was a resident and special education student in the Elmwood Park School District. He began receiving special education services in May 1997. In February 1998, following a reevaluation of D.D.'s individual educational program, D.D. was placed in a therapeutic day program at Joseph's Academy. D.D.'s mother became a resident of Oak Park in January 2001.
D.D.'s probation officer testified that, while at Joseph's Academy, D.D. did not comply with the terms of his probation. According to the probation officer, D.D. was frequently truant and failed to abide by his counseling and drug-treatment requirements. D.D. would also engage in fighting and "general gross behavior," resulting in suspensions. According to the probation officer, it was difficult to determine whether D.D. improved at Joseph's Academy due to his frequent truancy. D.D. was later discharged from Joseph's Academy, but was still considered to be in need of services. The probation officer recommended a therapeutic residential placement in view of D.D.'s problems with attendance at school, counseling, and probation department appointments. An advocacy supervisor at the Cook County juvenile probation department testified that a placement at the Center would be appropriate.
On June 15, 2001, the juvenile court found that Oak Park was liable for the educational portion of D.D.'s residential placement. An order requiring Oak Park to provide payment to the Center for D.D.'s education costs was entered on June 29, 2001. Oak Park filed a notice of appeal pursuant to Supreme Court Rule 303 (155 Ill.2d R. 303).
The appellate court reversed (337 Ill.App.3d 998, 272 Ill.Dec. 706, 788 N.E.2d 10), initially rejecting the State's argument that the court lacked jurisdiction over Oak Park's appeal. According to the appellate court, the June 29, 2001, order was final for purposes of appeal. The court reasoned that "[a] judgment is final if it decides the controversy between the parties on [its] merits and fixes their rights" such that, if judgment is affirmed, all that remains for the circuit court to do is execute the order. 337 Ill.App.3d at 1006, 272 Ill.Dec. 706, 788 N.E.2d 10, citing In re J.N., 91 Ill.2d 122, 127, 61 Ill.Dec. 776, 435 N.E.2d 473 (1982). According to the appellate *303 court, the June 29 order was final regarding Oak Park's obligation to pay for the educational portion of D.D.'s placement. The court further reasoned that the State's invocation of Supreme Court Rule 304(a) ( 155 Ill.2d R. 304(a)) was misplaced because appeals in delinquency proceedings are governed by the rules applicable to criminal appeals. 337 Ill.App.3d at 1008, 272 Ill.Dec. 706, 788 N.E.2d 10. Finally, the court held that Oak Parks' citation to Rule 303 was not fatal to its appeal. The State was not prejudiced by Oak Park citing to the wrong appellate rule. 337 Ill.App.3d at 1009, 272 Ill.Dec. 706, 788 N.E.2d 10, citing In re O.H., 329 Ill.App.3d 254, 263 Ill.Dec. 718, 768 N.E.2d 799 (2002).
The appellate court next held that the juvenile court lacked the statutory authority to order Oak Park to pay for the educational portion of the delinquent minor's residential placement. 337 Ill.App.3d at 1014, 272 Ill.Dec. 706, 788 N.E.2d 10. Regarding placements made pursuant to section 5-740 of the Act, either the legal guardian of the minor (705 ILCS 405/5-710(5) (West 1998)) or the county (705 ILCS 405/6-8(2) (West 1998)) is required to pay for the minor's care and support. 337 Ill.App.3d at 1013, 272 Ill.Dec. 706, 788 N.E.2d 10. Also, section 6-10(a) of the Act (705 ILCS 405/6-10(a) (West 1998)) provides for state reimbursement of county funds expended for the placement of minors pursuant to section 5-740. 337 Ill.App.3d at 1013, 272 Ill.Dec. 706, 788 N.E.2d 10. According to the appellate court, this statutory scheme does not include a school district as a responsible party. 337 Ill.App.3d at 1014, 272 Ill.Dec. 706, 788 N.E.2d 10.
We granted the State's petition for leave to appeal (177 Ill.2d R. 315) and now affirm the judgment of the appellate court.

ANALYSIS

I
Initially, the State argues that Oak Park never properly invoked the jurisdiction of the appellate court because it brought its appeal under Rule 303. Nevertheless, the appellate court found that the failure to cite the correct rule was not fatal. See In re O.H., 329 Ill.App.3d 254, 257, 263 Ill.Dec. 718, 768 N.E.2d 799 (2002) (holding that the State was not prejudiced by the incorrect invocation of civil rather than criminal rules in a delinquency matter). The State maintains that the disposition of this case is not controlled by O.H. because this court has suggested that a greater showing is required by a party seeking to invoke jurisdiction under the incorrect rule. See In re Curtis B., 203 Ill.2d 53, 271 Ill.Dec. 1, 784 N.E.2d 219 (2002) (where this court heard an appeal brought under a rule not invoked by the appellant (Rule 306(a)(5)) because the statute invoked by the appellant (section 2-28(3) of the Juvenile Court Act of 1987) was subsequently held to be unconstitutional). The State contends that neither Oak Park nor the appellate court has provided any justification as to why an appeal should be allowed under the improper rule in this case.
It is apparent that Oak Park should have cited Supreme Court Rule 606(a) (188 Ill.2d R. 606(a)), rather than Rule 303, in its notice of appeal. Rule 660 governs appeals in juvenile cases, providing, in relevant part, "[a]ppeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases." 134 Ill.2d R. 660(a). Under Rule 606(a), appeals in all criminal cases, other than those where a sentence of death has been imposed, are perfected by filing a notice of appeal with *304 the clerk of the trial court. 188 Ill.2d R. 606(a). Generally, the filing of the notice of appeal is the only jurisdictional step required to perfect an appeal. See, e.g., In re Tekela, 202 Ill.2d 282, 299, 269 Ill.Dec. 119, 780 N.E.2d 304 (2002); Steinbrecher v. Steinbrecher, 197 Ill.2d 514, 521, 259 Ill.Dec. 729, 759 N.E.2d 509 (2001). In this case, Oak Park timely filed its notice of appeal in the trial court, albeit citing Rule 303 rather than Rule 606(a). We agree with the appellate court that it had jurisdiction because Oak Park perfected its appeal.
Our decision in Curtis B. does not affect this analysis. Curtis B. involved child protection proceedings where the trial court entered an order that established a permanency goal of substitute care, pending the outcome of a parental rights termination proceeding. The mother appealed, and the State moved to dismiss the appeal for lack of appellate jurisdiction. The appellate court granted the State's motion, and the mother appealed. This court held that section 2-28(3) of the Juvenile Court Act of 1987 (705 ILCS 405/2-28(3) (West 1998)), permitting immediate appeals from permanency orders, violated the separation of powers doctrine. Curtis B., 203 Ill.2d at 60, 271 Ill.Dec. 1, 784 N.E.2d 219. As a result, the State argued that the mother has "forfeited the opportunity" to appeal, having exclusively relied on the appeal provision of section 2-28(3). Nevertheless, we held that the appellate court should consider the mother's appeal as properly brought pursuant to Supreme Court Rule 306(a)(5) (166 Ill.2d R. 306(a)(5)). Curtis B., 203 Ill.2d at 64, 271 Ill.Dec. 1, 784 N.E.2d 219. While we noted special circumstances in Curtis B., we did not base our holding on those circumstances. We agree with the appellate court that some showing of prejudice is required to prevent a party from proceeding with an appeal brought mistakenly under the civil appeal rules rather than the applicable criminal appeal rules. 337 Ill.App.3d at 1009, 272 Ill.Dec. 706, 788 N.E.2d 10, citing In re O.H., 329 Ill.App.3d at 257, 263 Ill.Dec. 718, 768 N.E.2d 799. Here, there was no prejudice demonstrated.
The State next argues that, even if Oak Park can assert jurisdiction pursuant to Rule 660(a), it did so too late. Under the Act, notice of appeal must be filed within 30 days of the final judgment or within 30 days of the entry of an order disposing of all timely motions directed against the judgment. See 188 Ill.2d R. 606(a). The State refers this court to dispositional orders entered on October 8, 1999, and November 2, 2000. Oak Park filed its notice of appeal on July 17, 2001. According to the State, the order of June 29, 2001, was not a final and appealable order because the case remains active for purposes of regular status reports on D.D.'s progress at the Heritage Center and his compliance with the terms of his probation.
Except in those situations where a supreme court rule provides for an interlocutory appeal, the appellate court only has jurisdiction to review final judgments. In re J.N., 91 Ill.2d 122, 126, 61 Ill.Dec. 776, 435 N.E.2d 473 (1982). A final judgment is defined as one that fixes the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits and, if affirmed, leaves only the execution of the judgment. J.N., 91 Ill.2d at 127, 61 Ill.Dec. 776, 435 N.E.2d 473, Dispositional orders from juvenile court are generally final and appealable. See In re D.S., 307 Ill.App.3d 362, 365, 240 Ill.Dec. 404, 717 N.E.2d 497 (1999). Furthermore, an order is final for purposes of review when matters left for future determination are merely incidental to the ultimate rights *305 that have been adjudicated by the judgment. Deckard v. Joiner, 44 Ill.2d 412, 417, 255 N.E.2d 900 (1970).
Contrary to the State's position, the June 29, 2001, order was the only order entered that required Oak Park to pay the educational portion of D.D.'s placement at the Heritage Center. For Oak Park, all that remained was enforcement of the order. This is true even though the order remained subject to future modification. We also note that Oak Park was not a party when the October 8, 1999, and November 2, 2000, dispositional orders were entered in this case. Therefore, Oak Park could not have challenged those orders.
The State lastly maintains that the June 29, 2001, order does not contain the requisite language to make it appealable pursuant to Supreme Court Rule 304(a) (155 Ill.2d R. 304(a)). According to the State, the order is not appealable because the juvenile court made no finding that there was no just reason to delay appeal or enforcement of the order. Rule 660 governs appeals in juvenile cases, providing, in relevant part, "[a]ppeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided, shall be governed by the rules applicable to criminal cases." (Emphasis added.) 134 Ill.2d R. 660(a). The order appealed from here was entered in a delinquency proceeding, and therefore, this case is governed by the rules applicable to criminal appeals. Rule 304(a) is not applicable to criminal appeals. See 177 Ill.2d R. 612. Therefore, it is inapplicable to this case.

II
We now turn to the central issue presented by this appeal: whether the juvenile court had authority to order Oak Park to pay for the educational portion of D.D.'s court-ordered, out-of-state residential placement. As noted by the appellate court and argued by the parties, resolution of this case depends upon harmonizing and differentiating between the School Code and the Juvenile Court Act.

A. The Individuals With Disabilities Education Act and the School Code
The Education for All Handicapped Children Act of 1975 (EAHCA) (20 U.S.C. § 1401 (1994)) was enacted by Congress to rectify "the failure of state education systems to meet the educational needs of children with disabilities." B. Tucker, Federal Disability Law § 14.1 (1994). In 1991, the EAHCA was amended and renamed the "Individuals with Disabilities Education Act" (IDEA) (20 U.S.C. § 1400 et seq. (2000)). By its own terms, the IDEA requires that students with disabilities receive a "free appropriate public education" (FAPE). 20 U.S.C. § 1400(c) (2000). A FAPE includes special education and related services that "(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program * * *." 20 U.S.C. § 1401(8) (2000).
Illinois implements its IDEA obligations by article XIV of the School Code. 105 ILCS 5/14-1.01 et seq. (West 1998). The School Code provides that the State Board of Education (the Board) must address the requirements of the IDEA when promulgating rules under the Code. 105 ILCS 5/14-3.01 (West 1998). Specifically, article 14 of the School Code, entitled "Children With Disabilities," provides that the Board must promulgate rules to insure that children with disabilities are provided a FAPE. 105 ILCS 5/14-8.02(a) (West 1998). Under section 14-1.02, "[a]n individualized *306 education program" must be written and agreed upon by appropriate school personnel and guardians for any child receiving special education. 105 ILCS 5/14-1.02 (West 1998).
Section 14-8.03 of the Code provides a framework for school districts to implement the individualized education plan (IEP) for eligible students. 105 ILCS 5/14-8.03 (West 1998). According to section 8.03, a school district shall consider and develop "the transition goals and supports for eligible students with disabilities" at the IEP meeting and provide services as identified in the student's individualized education plan. 105 ILCS 5/14- 8.03(a) (West 1998). These goals are outcome-oriented and include employment, postsecondary education, and community living alternatives. 105 ILCS 5/14-8.03 (West 1998). With these goals in mind, the school district's responsibilities to deliver specific educational services, including vocational training and community living skills instruction are clarified. 105 ILCS 5/14-8.03 (West 1998). Every year, a summary of the "student's transition goals and needed supports," resulting from the IEP, is submitted to the appropriate local "Transition Planning Committee." 105 ILCS 5/14-8.03 (West 1998).
When the student's resident school district is unable to meet a student's disability needs, the student is eligible to receive educational services elsewhere. See 105 ILCS 5/14-7.01 (West 1998) (children attending classes in another district); 105 ILCS 5/14-7.02 (West 1998) (children attending private schools, public out-of-state schools, public school residential facilities, or private special education facilities). In cases where a student attends a private school, public out-of-state school, public school residential facility, or private special education facility, section 14-7.02 of the School Code provides an avenue for the school or facility to be reimbursed by the student's resident district. 105 ILCS 5/14-7.02 (West 1998). Section 7.02 states that, if,
"because of his or her disability the special education program of a district is unable to meet the needs of a child and the child attends a non-public school or special education facility, * * * the school district in which the child is a resident shall pay the actual cost of tuition for special education and related services * * *. [A] `[n]onpublic special education facility' * * * include[s] a residential facility[ ] within or without the State of Illinois * * *." 105 ILCS 5/14-7.02 (West 1998).
Section 14-7.02 of the School Code further provides that any educational or related services provided "shall be at no cost to the parent or guardian of the child." 105 ILCS 5/14-7.02 (West 1998).
Section 14-7.03 of the School Code applies to children from orphanages, foster homes, children's homes, or in-state housing units. 105 ILCS 5/14-7.03 (West 1998). It provides, in relevant part, as follows:
"[F]or each disabled student who is placed residentially by a State agency or the courts for care or custody or * * * rehabilitation * * * the costs for educating the student are eligible for reimbursement under this Section providing the placing agency or court has notified the appropriate school district authorities of the status of student residency where applicable prior to or upon placement.
The district of residence of the parent * * * or disabled student * * * is responsible for the actual costs of the student's special education program and is eligible for reimbursement under this Section when placement is made by a *307 State agency or the courts." 105 ILCS 5/14-7.03 (West 1998).

B. Juvenile Court Act
The purpose of delinquency proceedings under the Juvenile Court Act is described as follows:
"It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the General Assembly declares the following to be important purposes of this Article:
(a) To protect citizens from juvenile crime.
(b) To hold each juvenile offender directly accountable for his or her acts.
(c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender. As used in this Section, `competency' means the development of educational, vocational, social, emotional and basic life skills which enable a minor to mature into a productive member of society.
(d) To provide due process, as required by the Constitutions of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced." 705 ILCS 405/5-101 (West 1998).
If the court finds that the minor is guilty of an offense, the court sets "a time for a sentencing hearing to be conducted under section 5-705 at which hearing the court * * * determine[s] whether it is in the best interests of the minor and the public that he or she be made a ward of the court." 705 ILCS 405/5-620 (West 1998). "[I]f [the minor] is * * * made a ward of the court, the court * * * determine[s] the proper disposition best serving the interests of the minor and the public." 705 ILCS 405/5-705 (West 1998). As part of a minor's sentence, the court may (1) place the minor on probation (705 ILCS 405/5-715 (West 1998)); or (2) place the minor with another guardian or commit the minor to an appropriate facility or institution in accordance with section 5-740 of the Act (705 ILCS 405/5-740 (West 1998)), with or without being placed on probation or court supervision. 705 ILCS 405/5-710 (West 1998).
Section 5-715 addresses what requirements may be placed upon a sentenced minor as a condition of probation. 705 ILCS 405/5-715 (West 1998). Among others, the court may require that the minor attend or reside in a facility established for the instruction or residence of persons on probation. 705 ILCS 405/5-715 (West 1998). Section 5-740 of the Act likewise provides the court with authority to place the delinquent minor in an appropriate facility. 705 ILCS 405/5-740 (West 1998). In particular, section 5-740 states:
"(1) If the court finds that * * * it is in the best interest of the minor to take him or her from the custody of his or her parents, guardian or custodian, the court may:
* * *
(c) commit him or her to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

*308 * * *
(e) commit him or her to any appropriate institution having among its purposes the care of delinquent children, including a child protective facility maintained by a child protection district serving the county from which commitment is made, but not including any institution under the authority of the Department of Corrections or of the Department of Children and Family Services.
* * *
(4) No placement by any probation officer or agency whose representative is appointed guardian of the person or legal custodian of a minor may be made in any out of State child care facility unless it complies with the Interstate Compact on the Placement of Children." 705 ILCS 405/5-740(1)(c), (1)(e), (4) (West 1998).
Section 6-7 of the Act provides:
"Each county board shall provide in its annual appropriation ordinance or annual budget, as the case may be, a reasonable sum for payments for the care and support of minors, and for payments for court appointed counsel in accordance with orders entered under this Act in an amount which in the judgment of the county board may be needed for that purpose." 705 ILCS 405/6-7 (West 1998).

C. Discussion
With these two statutory schemes in mind, we now turn to the parties' arguments on how the statutes should be interpreted and applied to this case. The interpretation of a statute is a question of law that we review de novo. Carver v. Sheriff of La Salle County, 203 Ill.2d 497, 506-07, 272 Ill.Dec. 312, 787 N.E.2d 127 (2003).
According to the State, the appellate court incorrectly held that the trial court lacked the statutory authority to order the school district to pay the educational component of D.D.'s residential placement. In particular, the State maintains that the appellate court erred in relying on section 5-740 of the Juvenile Court Act, mandating either the legal guardian of the minor or the county pay for the minor's care and support for children placed under that provision. According to the State, there is no indication in the record on appeal that D.D. was placed at the Center under section 5-740 and was more likely placed under section 5-715.
Oak Park counters that D.D.'s residential placement was not initiated under the School Code, but rather as a result of D.D.'s probation violation pursuant to the Juvenile Court Act. As the Act does not grant the authority to order school district funding for residential placements, the appellate court decision must be upheld. According to Oak Park, this conclusion obtains whether D.D. was placed under section 5-715 or section 5-740. We agree with Oak Park.
While we cannot conclude to an utter certainty, the trial court apparently relied on section 5-715 to place D.D. at the Heritage Center as a condition of his continued probation. The docket entry entered on November 2, 2000, seems to confirm this point. Therefore, the State is partly correct in its argument. The appellate court erroneously held that the trial court had relied on section 5-740 in placing D.D. That would have been an independent placement and not a placement as a condition of probation. As Oak Park aptly points out, however, that is a distinction without a difference.
Whether the placement was ordered under section 5-715 or section 5-740, it was *309 ordered as a result of D.D.'s probation violation under the Juvenile Court Act and not as a remedy for D.D.'s special education needs. While the State attempts to reach outside the parameters of the Juvenile Court Act to the School Code, relying on provisions for reimbursement from resident school districts, it ignores the School Code provisions requiring resident school districts to be involved in special education placements.
Under the School Code, it is apparent that a school district must be directly involved in out-of-district placements when a student cannot receive a free and appropriate public education in his or her own district. The Code requires resident school districts to consider and develop the transition goals and supports for eligible students with disabilities and provide services as identified in the student's IEP. The school district's responsibilities include rendering educational services like vocational training and community living skills instruction. 105 ILCS 5/14-8.03 (West 1998). We read the Code to provide that, if a student's resident school district is unable to meet his or her needs, only then is the student eligible to receive resident school district reimbursed educational services elsewhere. See 105 ILCS 5/14-7.01 (West 1998) (children attending classes in another district); 105 ILCS 5/14-7.02 (West 1998) (requiring the resident school district to pay certain educational expenses for a child if "because of his or her disability the special education program of a district is unable to meet" the child's needs). Here, because Oak Park's adequacy was not considered at all in ordering D.D. to an out-of-state facility, reimbursement is not required under section 7.02.
Nonetheless, the State voices a colorable argument that section 7.03 of the Code is applicable to the case at hand because D.D. was "placed * * * by a State * * * court[ ] for care or custody or * * * rehabilitation." 105 ILCS 5/14-7.03 (West 1998). Section 7.03, however, only imposes school district financial liability for a "special education program." (Emphasis added.) 105 ILCS 5/14-7.03 (West 1998). Setting aside the possible notice requirement problems of section 7.03, we hold fast to our conclusion that, because the placement was not accomplished under the School Code, but rather exclusively under the Juvenile Court Act, no provision of the School Code operates to compel school district reimbursement in this case. While the language of section 7.03 is arguably applicable, Oak Park was still not afforded the opportunity to be involved in the educational component of the placement decision. Nor was Oak Park's ability to provide a FAPE to D.D. ever assessed, contrary to the express mandates of the School Code. 105 ILCS 5/14-7.01, 14-7.02 (West 1998). In short, absent the school district's involvement, the placement here did not comply with the School Code and the IDEA's plan of a "special education program." See 105 ILCS 5/14-1.01 et seq. (West 1998) and 20 U.S.C. § 1400 et seq. (2000) (defining the requirements and parameters of special education programs).
In an analogous case, Dale M. v. Board of Education of Bradley-Bourbonnais High School, 237 F.3d 813 (7th Cir.2001), the Seventh Circuit Court of Appeals came to a similar conclusion when construing a similar reimbursement provision. Dale M. involved a student with disciplinary problems who was placed in a "therapeutic day school" designed to deal with disruptive and truant students. He was later charged with residential burglary and theft of a car. Following another residential burglary charge, he was incarcerated. The student's mother subsequently attained *310 his release from jail, placing him in a residential school in Maine. In reversing the district court's order for reimbursement, the court of appeals noted:
"[T]he purpose of the `service' that the school district is being asked to pay for is to keep Dale out of jail, both directly, because the judge was willing to release him from jail to [the therapeutic day school], and indirectly, because Dale is less likely to commit burglary and other crimes when he is in a residential facility than when he is living at home with only his mother to keep an eye on him.
Another way to put this is that Dale's problems are not primarily educational. He has the intelligence to perform well as a student and no cognitive defect or disorder such as dyslexia that prevents him from applying his intelligence to the acquisition of an education, without special assistance. His problem is a lack of proper socialization, as a result of which, despite his tender age, he has compiled a significant criminal record. His substance abuse interferes with his schooling; that is true; but it interferes with much else besides, such as ability to conform to the law and avoid jail." Dale M., 237 F.3d at 817.
In Ashland School District v. New Hampshire Division for Children, Youth & Families, 141 N.H. 45, 681 A.2d 71 (1996), a minor was placed at a youth center as the result of delinquency proceedings. The lower court found that the school district was not responsible for payment of the educational component of the minor's placement and the appellate court reversed. As noted by the appellate court in this case, however, Ashland School District involved a New Hampshire statute that required joinder of the legally liable school district in the juvenile proceedings, "`if the court contemplates a residential placement.'" 337 Ill.App.3d at 1015, 272 Ill.Dec. 706, 788 N.E.2d 10, quoting Ashland School District, 141 N.H. at 48, 681 A.2d at 73; see also N.H.Rev.Stat. Ann. ch. 169-B:22 (Lexis 2001). Unlike the New Hampshire statute, the Illinois Juvenile Court Act does not require, nor even provide for, the joinder of the school district in cases where residential placement is being considered for a delinquent minor. Compare N.H.Rev.Stat. Ann. ch. 169-B:22 (Lexis 2001) with 705 ILCS 405/1-1 et seq. (West 1998). Here, Oak Park was not previously made a party to the proceedings nor notified until after placement was ordered by the court. Likewise, the New Hampshire statute grants the juvenile court the power to require a school district to pay for the educational component of a delinquent minor's residential placement; here, the Illinois Act does not. Compare N.H.Rev.Stat. Ann. ch. 169-B:22 (Lexis 2001) with 705 ILCS 405/1-1 et seq. (West 1998).
The recent amendments to the IDEA provide additional support for our conclusion. The federal financial assistance requirement of a free and appropriate public education has now been specifically extended to include special education children who have been "suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A) (2000). Although D.D. is not a suspended or expelled student, D.D. certainly falls within a category of children with discipline problems. That a FAPE now requires the provision of special education services for suspended or expelled students reinforces our view that a local school district must be involved in the placement of a special education needs child who is subject to Juvenile Court Act proceedings. Moreover, in a parental placement scenario, the IDEA specifically provides that a school district is not required to pay for the cost of education of a disabled student, if the school district has made available a FAPE to the child. 20 *311 U.S.C. § 1412(a)(10)(C)(i) (2000). Thus, by analogy, this provision strengthens our conclusion that Oak Park's involvement was necessary in this case before it could be required to pay the educational component of D.D.'s placement.
In sum, Oak Park cannot be held liable for funding the educational component of the placement because D.D.'s residential placement was exclusively accomplished under the Juvenile Court Act and not the School Code. D.D.'s placement was not ordered by the court for an educational purpose. Moreover, Oak Park was neither afforded the opportunity to be involved in the educational component of the placement decision nor given the opportunity to assess whether it could provide sufficient educational services for D.D. Our decision is not intended to restrict the trial court's authority to place children in special education facilities. We merely reach the limited issue of whether a school district is legally obligated to pay for the placement under the facts presented here. In deciding this issue, we acknowledge the fundamental statutory principles that children with special education needs must receive a free and appropriate education as required by both the IDEA and Illinois School Code.

CONCLUSION
For the foregoing reasons, we hold that a trial court cannot order a school district to fund the education component of a special education student's residential placement made under the Juvenile Court Act when the school district was not involved in the placement. We therefore affirm the judgment of the appellate court, reversing the trial court order.
Appellate court judgment affirmed.