No. 2--06--0430          Filed: 5-4-07
_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| ANTIOCH COMMUNITY HIGH SCHOOL DISTRICT 17, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--AR--2045 |
| | ) | |
| THE BOARD OF EDUCATION, | ) | |
| PROVISO TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 209, | ) | Honorable |
| | ) | Wallace B. Dunn, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Antioch Community High School District 17 (Antioch), filed a three-count complaint seeking reimbursement from defendant, the Board of Education, Proviso Township High School District 209 (Proviso), for the educational component of residential services provided to Carlos J., a minor. For three months, Carlos was a resident at the Gateway Youth Care Foundation (Gateway), which is a private residential alcohol and drug treatment facility within Antioch's attendance borders. During Carlos's stay, his mother resided in Maywood, which is within Proviso's attendance borders.

Antioch alleges that section 10--20.12a of the School Code (Code) (105 ILCS 5/10--20.12a (West 2004)) obligated Proviso to pay for Carlos's educational services because his mother had retained custody of him and resided within Proviso's boundaries. Proviso responds that Carlos was

placed at Gateway pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1--1 et seq. (West 2004)), and because Proviso had no input into Carlos's placement, the reimbursement provisions of the Code do not apply.

The parties filed opposing motions for summary judgment. The trial court granted Proviso summary judgment, concluding that Carlos was a ward of the juvenile court and that, therefore, the court had placed him as a resident of Antioch. Antioch appeals, arguing that the reimbursement provisions of the Code entitle it to reimbursement from Proviso. Consistent with the supreme court's recent decision in In re D.D., 212 Ill. 2d 410 (2004), we hold that, because Carlos's placement was accomplished not under the Code but exclusively pursuant to the Act and Proviso had no input into his placement, Antioch may not obtain reimbursement under the Code. We affirm.

FACTS

On October 5, 2005, Antioch filed a three-count complaint alleging claims for reimbursement under the Code (see 105 ILCS 5/10--20.12a (West 2004)), unjust enrichment, and quantum meruit. Antioch alleges damages of $6,052 for Gateway's cost of educational services to Carlos.

On January 9, 2006, Proviso moved for summary judgment, arguing that, while the Code generally provides for the type of reimbursement sought by Antioch, such reimbursement is not warranted in this case because (1) Proviso was not involved in placing Carlos at Gateway, (2) Proviso was never alerted to his special needs, and (3) there was no determination that Proviso could not meet Carlos's needs within its own boundaries.

In support of its summary judgment motion, Antioch attached documents showing that, since January 2004, Carlos' mother, Sharese Bell, has lived at a residence within Proviso's attendance borders. Proviso countered with an affidavit in which Proviso's superintendent stated that Carlos has

never been enrolled in one of Proviso's schools. Proviso also submitted an order dated April 19, 2004, in which the circuit court of Cook County ordered that Carlos "complete the Gateway Youth Care Residential Program in Lake Villa." The record also contains a document labeled "Gateway Educational Program Intake Face Sheet," which identifies the Juvenile Probation Department of Cook County as the agency placing Carlos at Gateway. In its opening brief, Antioch admits that "th[e] placement was ordered as a condition of Carlos' probation in Juvenile Court case number 02--JD--04694, a delinquency matter."

From May 5, 2004, to August 6, 2004, Carlos was enrolled at Gateway for 56 school days. Each month during Carlos's stay, Antioch billed Proviso for the educational services. Proviso denied financial liability and refused to pay any of the bills. According to Proviso, it did not learn of Carlos's placement until Antioch began submitting the bills.

The trial court granted Proviso summary judgment on count I of the complaint, which sought reimbursement under the Code (see 105 ILCS 5/10--20.12a (West 2004)). The parties stipulated that, for purposes of appeal, the summary judgment ruling would also apply to counts II and III, which alleged the claims of unjust enrichment and quantum meruit. The trial court entered a written finding of appealability under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), and Antioch's timely appeal followed.

ANALYSIS

The law of summary judgment is well settled. In an appeal from a summary judgment ruling, we conduct a de novo review. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992). Summary judgment is governed by the provisions of section 2--1005 of the Code of Civil Procedure. 735 ILCS 5/2--1005 (West 2004). Under section 2--1005(c), a party is entitled

to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2004). Because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. Logan v. Old Enterprise Farms, Ltd., 139 Ill. 2d 229, 233 (1990). Accordingly, the reviewing court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. Logan, 139 Ill. 2d at 234. Where reasonable persons could draw divergent inferences from undisputed facts, summary judgment should be denied. Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 272 (1992).

When, as in this case, "the parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." Bangert v. Northern Trust Co., 362 Ill. App. 3d 402, 407 (2005). "However, the filing of cross-motions for summary judgment does not establish the absence of issues of material fact and does not oblige a trial court to rule without further fact-finding; this court, reviewing the grant of summary judgment de novo, may determine that, despite the summary judgment filings, a material issue of fact remains which precludes the entry of summary judgment for either party." Kalis v. Colgate-Palmolive Co., 357 Ill. App. 3d 172, 174 (2005).

Antioch confines its appellate argument to count I of its complaint, which alleged a claim for reimbursement under the Code. For purposes of section 10--20.12b of the Code, the residence of a person who has legal custody of a pupil is deemed to be the residence of the pupil, and "legal custody" can mean custody exercised by a natural or adoptive parent with whom the pupil resides. 105 ILCS 5/10--20.12b(a) (West 2004). Antioch argues that, pursuant to section 10--20.12b(a),

Carlos was a resident of Proviso during his stay at Gateway because his mother lived within Proviso's borders and had legal custody of him.

Based on the premise that Carlos was treated at Gateway for drug and alcohol dependency while a resident of Proviso pursuant to section 10--20.12b(a) of the Code, Antioch alleges a claim for reimbursement for educational services under section 10--20.12a. Section 10--20.12a of the Code provides in relevant part as follows:

"Unless otherwise agreed to by the parties involved and where the educational services are not otherwise provided for, educational services for an Illinois student under the age of 21 in a residential program designed to correct alcohol or other drug dependencies shall be provided by the district in which the facility is located and financed as follows. The cost of educational services shall be paid by the district in which the student resides in an amount equal to the cost of providing educational services in a treatment facility. Payments shall be made by the district of the student's residence and shall be made to the district wherein the facility is located no less than once per month unless otherwise agreed to by the parties." 105 ILCS 5/10--20.12a (West 2004).

Proviso argues that Carlos was placed at Gateway pursuant to the Act and that, therefore, any potential reimbursement would be prescribed by the Act, not the Code. Proviso concludes that the Act does not obligate it to reimburse Antioch. Antioch counters that, because (1) it stakes its claim for reimbursement under the Code rather than the Act; and (2) Carlos remained a resident of Proviso under the Code, section 10--20.12a of the Code obligates Proviso to pay for the educational component of Carlos's residential placement. Contrary to Antioch's assertion, this case is governed by D.D., which supports Proviso's position.

D.D., a special education student, was adjudicated a delinquent minor and placed on probation under section 5--715 of the Act (705 ILCS 405/5--715 (West 1998)). As a condition of probation, the juvenile court placed D.D. at a residential treatment and education center in Utah. D.D., 212 Ill. 2d at 412. The juvenile court ordered D.D.'s resident school district to pay the State for the educational component of D.D.'s residential placement at the center. The appellate court reversed the order, ruling that the juvenile court lacked authority under the Code and the Act to order the school district to pay the State for the educational component of D.D.'s residential placement. D.D., 212 Ill. 2d at 413.

In D.D., the supreme court harmonized the Act and the Code in the context of reimbursement for a special education student's educational expenses, and that harmonization guides our analysis. At issue was whether either the Act or the Code obligated D.D.'s resident school district to reimburse the State for the educational portion of his out-of-state residential placement. D.D., 212 Ill. 2d at 419.

The court began by setting forth the State's obligation under the Code to arrange placement for special education students like D.D. Article 14 of the Code, entitled "Children With Disabilities," provides that the State Board of Education must promulgate rules to insure that children with disabilities are provided a "free and appropriate public education" (FAPE) as mandated by the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §1400 et seq. (2000)). 105 ILCS 5/14--8.02(a) (West 1998); D.D., 212 Ill. 2d at 420. To that end, section 14--1.02 of the Code provides that "an individualized education program" must be written and agreed upon by appropriate school personnel and guardians for any child receiving special education. 105 ILCS 5/14--1.02 (West 1998); D.D., 212 Ill. 2d at 420. "Section 14--8.03 of the School Code provides a framework

for school districts to implement the individualized education plan (IEP) for eligible students. 105 ILCS 5/14--8.03 (West 1998)." D.D., 212 Ill. 2d at 420. "[A] school district shall consider and develop 'the transition goals and supports for eligible students with disabilities' at the IEP meeting and provide services as identified in the student's individualized education plan. 105 ILCS 5/14--8.03 (West 1998)." D.D., 212 Ill. 2d at 420-21. Mindful of the outcome-oriented statutory goals, "the school district's responsibilities to deliver specific educational services, including vocational training and community living skills instruction, are clarified. 105 ILCS 5/14--8.03 (West 1998)." D.D., 212 Ill. 2d at 421. "Every year, a summary of the 'student's transition goals and needed supports,' resulting from the IEP, is submitted to the appropriate local 'Transition Planning Committee.' 105 ILCS 5/14--8.03 (West 1998)." D.D., 212 Ill. 2d at 421.

"When a student's resident school district is unable to meet the student's disability needs, the student is eligible to receive educational services elsewhere." D.D., 212 Ill. 2d at 421, citing 105 ILCS 5/14--7.01, 14--7.02 (West 1998). In cases where the student receives those services by attending a private school, public out-of-state school, public-school residential facility, or private special education facility, the school or facility is entitled to reimbursement from the student's resident district, but any educational or related services provided " 'shall be at no cost to the parent or guardian of the child.' " D.D., 212 Ill. 2d at 421-22, quoting 105 ILCS 5/14--7.02 (West 1998).

The D.D. court also set forth the analogous provisions for placing delinquent minors pursuant to the Act. "If the [juvenile] court finds that the minor is guilty of an offense, the court sets 'a time for a sentencing hearing to be conducted under section 5--705 at which hearing the court *** determine[s] whether it is in the best interests of the minor and the public that he or she be made a ward of the court.' 705 ILCS 405/5--620 (West 1998)." D.D., 212 Ill. 2d at 423. " '[I]f [the minor]

is *** made a ward of the court, the court *** determine[s] the proper disposition best serving the interests of the minor and the public.' 705 ILCS 405/5--705 (West 1998)." D.D., 212 Ill. 2d at 423. "As part of a minor's sentence, the court may (1) place the minor on probation (705 ILCS 405/5--715 (West 1998)); or (2) place the minor with another guardian or commit the minor to an appropriate facility or institution in accordance with section 5--740 of the Act (705 ILCS 405/5--740 (West 1998)), with or without being placed on probation or court supervision. 705 ILCS 405/5--710 (West 1998)." D.D., 212 Ill. 2d at 423.

"Section 5--715 addresses what requirements may be placed upon a sentenced minor as a condition of probation. 705 ILCS 405/5--715 (West 1998). Among others, the court may require that the minor attend or reside in a facility established for the instruction or residence of persons on probation. 705 ILCS 405/5--715 (West 1998). Section 5--740 of the Act likewise authorizes the court to place the delinquent minor in an appropriate facility. 705 ILCS 405/5--740 (West 1998)." D.D., 212 Ill. 2d at 423.

The supreme court found that D.D.'s out-of-state residential placement was initiated not under the Code, but rather as a result of D.D.'s probation violation pursuant to section 5--715 of the Act. D.D., 212 Ill. 2d at 425. The court emphasized that the adequacy of D.D.'s resident district "was not considered at all" in ordering D.D. to an out-of-state facility and that, therefore, the noncompliance with section 14--8.03 of the Code barred the State from reimbursement under section 14--7.02. D.D., 212 Ill. 2d at 426. The court further noted that the juvenile court did not order D.D.'s placement for an educational purpose. D.D., 212 Ill. 2d at 429. The D.D. court held that "[w]hile the State attempts to reach outside the parameters of the Juvenile Court Act to the School Code, relying on provisions for reimbursement from resident school districts, it ignores the School

Code provisions requiring resident school districts to be involved in special education placements." D.D., 212 Ill. 2d at 426. The court unambiguously stated, "we hold fast to our conclusion that, because the placement was not accomplished under the School Code, but rather exclusively under the Juvenile Court Act, no provision of the School Code operates to compel school district reimbursement in this case." D.D., 212 Ill. 2d at 427.

Antioch argues that D.D. does not apply here because in D.D. the State sought reimbursement for special education services from D.D.'s resident school district pursuant to section 14--7.02b of the Code, whereas in this case Antioch seeks reimbursement from Proviso pursuant to section 10--20.12a of the Code. We view this distinction as one without a difference. D.D. teaches that reimbursement from a resident school district is appropriate only if it is prescribed by the statutory scheme under which the minor was placed. In other words, if a minor is placed in a facility pursuant to the Act, reimbursement is proper only as provided under the Act. Similarly, if a minor is placed pursuant to the Code, reimbursement is proper only as provided under the Code. D.D. was not placed pursuant to the Code, and therefore reimbursement under the Code was not appropriate. D.D. compels a similar result in this case because we conclude that Carlos was placed at Gateway not under the Code but exclusively under the Act.

The parties agree that Carlos was adjudicated delinquent by the juvenile division of the Cook County circuit court and that Carlos's placement at Gateway was a condition of his probation under section 5--715 of the Act. Furthermore, nothing suggests that Carlos's placement was for an educational purpose or otherwise related to the Code. Carlos was not placed at Gateway as a special education student like D.D., and Antioch cites no section of the Code under which he might have been placed as a regular education student.

Antioch argues that Carlos was placed as a regular education student and that D.D. does not apply because it is limited to cases involving placements of special education students. However, a brief overview of section 10--20.12b(c) of the Code illustrates that a regular education student's placement under the Code is not made in a vacuum; the person who placed the student is entitled to a hearing to determine the student's residency status.

Section 10--20.12b of the Code provides the framework for determining residency and reimbursement obligations of resident school districts. Section 10--20.12b(c) provides as follows:

"If a school board in a school district with a population of less than 500,000 determines that a pupil who is attending school in the district on a tuition free basis is a nonresident of the district for whom tuition is required to be charged under Section 10--20.12a, the board shall notify the person who enrolled the pupil of the amount of the tuition charged under Section 10--20.12a that is due to the district for the nonresident pupil's attendance in the district's schools. The notice shall be given by certified mail, return receipt requested. Within 10 days after receipt of the notice, the person who enrolled the pupil may request a hearing to review the determination of the school board. The request shall be sent by certified mail, return receipt requested, to the district superintendent. Within 10 days after receipt of the request, the board shall notify, by certified mail, return receipt requested, the person requesting the hearing of the time and place of the hearing, which shall be held not less than 10 nor more than 20 days after the notice of hearing is given. The board or a hearing officer designated by the board shall conduct the hearing. The board and the person who enrolled the pupil may be represented at the hearing by representatives of their choice. At the hearing, the person who enrolled the pupil shall have the burden of going forward with the evidence concerning

the pupil's residency. If the hearing is conducted by a hearing officer, the hearing officer, within 5 days after the conclusion of the hearing, shall send a written report of his or her findings by certified mail, return receipt requested, to the school board and to the person who enrolled the pupil. The person who enrolled the pupil may, within 5 days after receiving the findings, file written objections to the findings with the school board by sending the objections by certified mail, return receipt requested, addressed to the district superintendent. Whether the hearing is conducted by the school board or a hearing officer, the school board shall, within 15 days after the conclusion of the hearing, decide whether or not the pupil is a resident of the district and the amount of any tuition required to be charged under Section 10--20.12a as a result of the pupil's attendance in the schools of the district. The school board shall send a copy of its decision to the person who enrolled the pupil, and the decision of the school board shall be final." (Emphasis added.) 105 ILCS 5/10--20.12b(c) (West 2004).

If Carlos had indeed been placed at Gateway pursuant to the Code, section 10--20.12b(c) would have required Antioch to notify "the person who enrolled" Carlos of the cost of his nonresident tuition and then to afford that person the opportunity to challenge the determination of nonresidency. In this case, the juvenile court directed Carlos to be enrolled, and neither his mother nor Proviso would have been entitled to any input in the proceedings for determining Proviso's reimbursement obligation under section 10--20.12b(c). If we were to adopt Antioch's position, section 10--20.12b(c) would have triggered the juvenile court's involvement as a party in school board proceedings to determine whether Carlos was a resident of Proviso or Antioch. The interest in avoiding such an absurd result supports our conclusion that Carlos's placement was not

accomplished under the Code. See <u>Shively v. Belleville Township High School District No. 201</u>, 329 Ill. App. 3d 1156, 1165-66 (2002) (the cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature, and a statute should not be construed to produce an absurd, unjust, or unreasonable result).

The parties agree that Carlos was placed at Gateway as a condition of his probation under section 5--715 of the Act, and Antioch argues at length about the differences between independent placements under section 5--740 and placements made as conditions of probation. However, the <u>D.D.</u> court declared it irrelevant whether a student's placement was ordered as a condition of probation (705 ILCS 405/5--715 (West 1998)) or as an independent placement (705 ILCS 405/5--740 (West 1998)); the operative fact is that the student is placed not under the Code but exclusively under the Act. <u>D.D.</u>, 212 Ill. 2d at 425-26.

We reject Antioch's assertion that <u>Carbondale Community High School District No. 165 v. Herrin Community Unit School District No. 4</u>, 303 Ill. App. 3d 656 (1999), compels us to reverse the entry of summary judgment for Proviso. In that case, Carbondale, the serving district, sought reimbursement from Herrin under section 10--20.12a for educational services provided to a minor who resided within Herrin. <u>Carbondale</u>, 303 Ill. App. 3d at 657. Pursuant to section 2--3.13a of the Code (105 ILCS 5/2--3.13a (West 1996)), the minor had been expelled from Herrin's schools for a drug-related offense, and that section barred him from attending a "public school." <u>Carbondale</u>, 303 Ill. App. 3d at 658-59. During the one-year period of expulsion, the minor was enrolled for eight days at a Gateway facility in Carbondale. <u>Carbondale</u>, 303 Ill. App. 3d at 657. The appellate court reconciled the expulsion section and the reimbursement section of the Code. The court held that reimbursement was proper because the expulsion section did not bar an expelled student from

obtaining educational services at a facility other than a public school. Carbondale, 303 Ill. App. 3d at 660. The court emphasized that "[w]hen a youth *** is expelled from one school district and, while being enrolled in a residential treatment facility, receives educational services from another district, that youth is not attending a public school [which would be barred by the expulsion section]; he is receiving education services" which would be allowed by the expulsion section and reimbursable under section 10--20.12a. Carbondale, 303 Ill. App. 3d at 660.

Antioch cites Carbondale for the proposition that section 10--20.12a "allows for reimbursement to the serving district regardless of whether the resident district was involved in the placement." However, the opinion does not make clear whether the placement was accomplished through the Act or the Code. According to D.D., the method of placing the minor is the operative fact in determining whether reimbursement is allowed under section 10--20.12a of the Code. Because we do not know whether the minor in Carbondale was placed (1) as a term of probation or an independent placement under the Act or (2) under the Code, the case provides little guidance in light of D.D. Carbondale is an appellate court disposition that predates the supreme court's decision in D.D., and therefore, to the extent that Carbondale conflicts with D.D., D.D. takes precedence and we need not follow Carbondale.

Because Carlos's placement was accomplished not under the Code but exclusively under the Act, "no provision of the School Code operates to compel school district reimbursement in this case." See D.D., 212 Ill. 2d at 427. Instead, the Act governs any reimbursement that might be available to Antioch. For Antioch's benefit, we note that section 6--7 of the Act provides that "[e]ach county board shall provide in its annual appropriation ordinance or annual budget, as the case may be, a reasonable sum for payments for the care and support of minors, and for payments for court

appointed counsel in accordance with orders entered under this Act in an amount which in the judgment of the county board may be needed for that purpose." 705 ILCS 405/6--7(1) (West 2004). Furthermore, "[n]o county may be charged with the care and support of any minor who is not a resident of the county unless his parents or guardian are unknown or the minor's place of residence cannot be determined." 705 ILCS 405/6--7(2) (West 2004). This disposition does not limit any remedy that might be available to Antioch under the Act.

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.